BENDIX CORPORATION, et al.,
Defendants Below, Appellant,

v.

Kenneth STAGG, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Sept. 26, 1984.
Decided: Dec. 13, 1984.

Richard K. Herrmann (argued) and
Phebe S. Young of Bayard, Brill & Handel-
man, Wilmington, for appellant, Bendix
Corporation.

Thomas C. Crumplar (argued) and Doug-
las B. Canfield of Jacobs & Crumplar, P.A.,
Wilmington, for appellee.

Before McNEILLY, MOORE and
CHRISTIE, JJ.

McNEILLY, Justice:

This interlocutory appeal is from the Superior Court's denial of defendant Bendix's Motion for Summary Judgment.[1] Defendant contends that plaintiff's product liability claim is barred by the applicable Statute of Limitations 10 *Del.C.* § 8119.[2] The issue before this Court is whether the discovery rule we enunciated in *Layton v. Allen*, Del.Supr., 246 A.2d 794 (1968) is applicable in a product liability action involving latent diseases. The Superior Court answered in the affirmative. *Stagg v. Bendix*, Del.Super., 472 A.2d 40 (1984). We agree and hereby Affirm.

## I

This product liability suit was brought by plaintiff, Kenneth Stagg, for his injuries, including his contraction of asbestosis, arising from his inhalation of asbestos fibers. Although numerous defendants are named in the suit, our focus is upon the Superior Court's denial of defendant, Bendix's Motion for Summary Judgment.

Kenneth Stagg claims to have been exposed to various products containing asbestos most of his work life spanning forty-four years, beginning in 1939. Specifically, he claims that he was exposed to asbestos from Bendix while fitting brake linings on heavy duty trucks and earth moving equipment while in the employ of the United States Air Force from 1947 to 1952 and from 1956 to 1972. After 1972, Stagg was exposed to asbestos products manufactured by parties other than Bendix.

Stagg alleges that Bendix was tortious in its manufacture, distribution, and supply of products containing asbestos, and in its failure to provide warnings as to the dangers involved in handling such products.

Bendix admits that it manufactured brakelinings containing asbestos during these years and for the purpose of its motion for summary judgment, concedes that Stagg may have been exposed to its asbestos products before 1973.

Although the last date of his exposure to Bendix's products was in 1972, Stagg asserts that his suit filed on December 29, 1982 is timely since his injuries did not manifest themselves earlier than 2 years before his complaint was filed. He contends that it was in the year or two prior to 1982 that he experienced some difficulty in breathing. He claims to have been assured by physicians that he was not suffering from asbestosis. Not until he consulted Dr. Susan Daum, a specialist in asbestosis diagnosis, in May of 1982, did he know that he had asbestosis.

In short, Stagg relies upon the discovery rule enunciated by this Court in *Layton v. Allen, supra*, to preserve his claim.

## II

Confronted with the ambiguous language of the applicable Statute of Limitations,[3] this Court in the medical malpractice case of *Layton v. Allen, supra*, held that:

When an inherently unknowable injury, such as is here involved, has been suffered by one blamelessly ignorant of the act or omission and injury complained of, and the harmful effect thereof develops gradually over a period of time, the injury is "sustained" under § 8118 when the harmful effect first manifests itself and becomes physically ascertainable.

brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained; subject, however, to the provisions of § 8127 of this title.

---

**1.** Although Bendix actually filed a motion to dismiss the complaint, since material outside the pleadings was submitted by both parties, the motion was treated as one for summary judgment under Superior Court Civil Rule 56(b).

**2.** Specifically, Bendix argues that plaintiff's claim is barred by 10 *Del.C.* § 8119 which states:
    § 8119. Personal injuries.
        No action for the recovery of damages upon a claim for alleged personal injuries shall be

**3.** In *Layton*, the Statute is identified as to 10 *Del.C.* § 8118 of the 1953 Delaware Code. The 1974 revision now identifies that Statute as 10 *Del.C.* § 8119.

*Id.* at 798. Defendant, Bendix, argues that our holding in *Layton* is confined to the facts of that case involving a medical malpractice action or at least confined to those situations in which the expertise of the defendant in rendering professional service is relied upon.

In support of its position, Bendix cites this Court's subsequent applications of the *Layton v. Allen* discovery rule in *Isaacson, Stolper & Co. v. Artisan's Savings Bank,* Del.Supr., 330 A.2d 130 (1974) and *Pioneer Nat. Title Ins. Co. v. Child, Inc.,* Del.Supr., 401 A.2d 68 (1979). In *Isaacson, Stolper & Co. v. Artisan's Savings Bank,* we applied the discovery rule to a claim of malpractice by an accountant and in *Pioneer National Title Insurance Co. v. Child, Inc.,* the discovery rule was applied to an attorney malpractice claim.

Although we have thus far applied the *Layton* discovery rule in those cases where the expertise of the defendant in rendering professional service is relied upon, the holding of Layton is not limited to those types of cases. Nor has Bendix offered any policy reasons why *Layton* should be so limited. The fact of the matter is, in *Layton* we find support for the application of the discovery rule in *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949).

*Urie v. Thompson* was a Federal Employers' Liability Act case involving the contraction of silicosis, another lung disease of slow progression. It was contended there that plaintiff contacted silicosis so long before the filing of the action as to be barred by the Statute of Limitations. The United States Supreme Court, however, held that the plaintiff was injured "only when the accumulated effects of the deleterious substance manifested themselves." In rejecting the argument that the Statute of Limitations began to run at the inhalation of silica dust, the Court explained:

> We do not think the humane legislative plan intended such consequences to attach to blameless ignorance. Nor do we think those consequences can be reconciled with the traditional purposes of statutes of limitations, which conventionally require the assertion of claims within a specified period of time after notice of the invasion of legal rights.

337 U.S. at 170, 69 S.Ct. at 1025.

Asbestosis is another lung disease of slow progression. The inhalation of asbestos fibers over a considerable period of time cause a body reaction that may eventually impair the functioning of the lungs. *See Insurance Co. of North America v. Forty-Eight Insulations, Inc.,* E.D.Mich., 451 F.Supp. 1230, 1236–37 (1978). Being unable to remove the particles of asbestos fiber, the lung reacts by walling off the particles. The walling off is accomplished by a proliferation of cells that eventually produce a dense scar like material. It may be many years before the presence of scar tissue can be detected, and still longer before the scar tissues reach a level as to impair or incapacitate the lung. The average latency period is twenty years from the initial exposure, but it may be as long as 50 years. *Id.*

Given that asbestosis is a latent disease, the same question is before us here as was in *Layton v. Allen.* Is it reasonable to conclude that the General Assembly, in wording § 8119, intended that such an inherently unknowable injury to a blamelessly ignorant plaintiff should be deemed "sustained" and an action thereon barred, before the harm had manifested itself? Again, we think not.

To require a plaintiff inflicted with asbestosis to bring his claim within two years of exposure or, as Bendix has argued, within two years of six months after exposure, when the scar tissue may begin to form, would be to ascribe to the General Assembly an intent contrary to reason and justice. Within such time plaintiff would still be without knowledge that he is suffering from the diseases caused by inhalation of asbestos fibers.

Here, Stagg was blamelessly ignorant that he suffered from an inherently

unknowable injury, asbestosis. Therefore, the Statute of Limitations began to run when the harmful effect first manifested itself and became physically ascertainable. Just when the harmful effect first manifested itself and became ascertainable is a question of fact which is to be determined on a case by case basis by the Trial Court. *Strickland v. Johns-Manville Intern. Corp.* S.D.Tex., 461 F.Supp. 215 ·(1978). Here, the Superior Court properly denied Bendix's motion for summary judgment as it is still controverted when his asbestosis manifested itself and became ascertainable.

### III

■ Bendix's reliance upon the recently enacted "Agent Orange" legislation, codified at 10 *Del.C.* § 8131,[4] is without merit. Section 8131 establishes a Statute of Limitations for Vietnam era veterans who were exposed to toxic herbicides, including Agent Orange. Bendix relies upon the act to argue what it thinks is the General Assembly's current interpretation of Section 8119. Bendix argues that if the General Assembly thought that the discovery rule of *Layton* applied to latent disease cases the passage of 10 *Del.C.* § 8131 would have been unnecessary.

Bendix is incorrect. The Agent Orange legislation went beyond the *Layton* discovery rule. Under 10 *Del.C.* § 8131, the Statute of Limitations does not begin to run for herbicide victims until "said person has been told by a licensed physician (whether in Delaware or otherwise) that his (or her) injuries or death may be related, in

whole or in part, to exposure to phenoxy herbicides". The General Assembly clearly intended a different Statute of Limitations to apply to herbicide victims than would be available under *Layton.*

Contrary to Bendix's argument, the General Assembly has simply not spoken on the issue before this Court today. · If the General Assembly wants to so act, there is no reason to believe it will not expressly do so as it has done with the Agent Orange Statute and as it has in the medical malpractice area. *See* 18 *Del.C.* § 6856, *Dunn v. St. Francis Hosp.*, Del.Supr., 401 A.2d 77 (1979), *Reyes v. Kent General Hospital, Inc.*, Del.Supr., 487 A.2d 1142 (1984). Until the General Assembly does so act, we will not interpret 10 *Del.C.* § 8119 to do an injustice to those inflicted with an inherently unknowable disease such as asbestosis.

We note that our holding here is in accord with most jurisdictions that have considered the issue of whether some type of discovery rule should apply to the running of the Statute of Limitations when a blamelessly ignorant plaintiff is inflicted with a latent disease. *See* Annot., 1 A.L.R. 117 (1980), Frumer and Friedman, *Product Liability* § 39.01[3], Goggin and Brophy, *Toxic Torts*, 28 Vill.L.Rev. 1220, N. 29. In light of the decision of those states that have considered this issue, we do not believe that the General Assembly would act in a way much different than our holding today.

### IV

■ Bendix's final argument is that assuming *arguendo* the *Layton v. Allen* dis-

---

4. The Statute of Limitations of 10 *Del.C.* § 8131 provides:

§ 8131. Limitation for Indochina herbicide exposure.

(a) Notwithstanding any other provision to the contrary, the time limitation for an action to recover damages for wrongful death or for personal injuries suffered by a member or former member of the armed forces of the United States, who served as a member of the armed forces of the United States in Indochina between January 1, 1962, and May 7, 1975, inclusive, due to exposure to phenoxy herbicides, including but not limited to exposure to substances known as Agent Orange, Agent

Blue, Agent White and chemical components known as 2, 4–D; 2, 4, 5–T; TCDD; Picloran and cacodylic acid, shall not expire until 2 years has elapsed from the date that said person has been told by a licensed physician (whether in Delaware or otherwise) that his (or her) injuries or death may be related, in whole or in part, to exposure to phenoxy herbicides.

(b) If the foregoing 2-year period has expired as of May 10, 1983, then said person shall have from 6 months from May 10, 1983, to file an action to recover damages for phenoxy herbicide exposure in Indochina.

covery rule is applicable, the Trial Court here misstated the rule.

The Trial Court summarized that, "the period of limitations became effective when he [plaintiff] was chargeable with knowledge that his physical condition was attributable to asbestos exposure" 472 A.2d at 43. We do not find that summary inconsistent with our holding in *Layton* that the injury is sustained "when the harmful effect first manifests itself and becomes physically ascertainable." 246 A.2d at 798.

\* \* \*

AFFIRMED.