673 A.2d 159 (1996)
In re ASBESTOS LITIGATION.
Marvin E. COLLINS and Freida M. Collins, his wife, Plaintiffs Below, Appellants,
v.
PITTSBURGH CORNING CORPORATION; Abex Corporation; A.C. & S. Co., Inc., a/k/a ACandS, Inc., formerly known as Armstrong Contracting and Supply Corp.; E.I. DuPont de Nemours & Co. Inc.; Owens-Corning Fiberglas Corporation; Owens-Illinois, Inc.; Rapid-American Corporation, Successor-in-Interest to the Philip Carey Corporation and Carey Canadian Mines, Defendants Below, Appellees.
No. 238, 1995.
Supreme Court of Delaware.
Submitted: February 21, 1996.
Decided: March 26, 1996.
Thomas C. Crumplar (argued), and Mary Ann Matuszewski, Jacobs & Crumplar, P.A., Wilmington, for appellants.
C. Scott Reese, Cooch and Taylor, Wilmington, and Frank H. Santoro (argued), and Gerald A. DeSimone, Danaher, Tedford, Lagnese & Neal, P.C., Hartford, Connecticut, for appellee Pittsburgh Corning Corporation.
Andrew G. Ahern, III and Kelly J. Sasso, Joseph W. Benson, P.A., Delaware, for appellee, Abex Corporation.
*161 Paul A. Bradley, McCarter & English, Wilmington, for appellees ACandS, Inc. and Owens-Illinois, Inc.
John C. Phillips, Jr., Phillips, Goldman & Spence, P.A., Wilmington, for appellee E.I. DuPont de Nemours & Company.
Armand J. Della Porta, Jr., Kelley, Jasons, Maguire & Spinelli, Wilmington, for appellee Owens Corning Fiberglas Corporation.
William F. Taylor, Jr., Elzufon & Austin, Wilmington, for appellee, Rapid American Corporation.
Before WALSH, HOLLAND, and BERGER, JJ.
*160 WALSH, Justice:
In this appeal from the Superior Court, the plaintiff-appellant, Marvin Collins ("Collins"), asserts error in the Superior Court's grant of summary judgment in favor of the defendants-appellees on the basis that the statute of limitations bars Collins' claim for damages resulting from asbestos exposure. The trial court ruled that Collins' long-held belief that he had incurred an asbestos related ailment was sufficient to place him on notice of the existence of a viable claim even in the absence of objective evidence to support his belief. We conclude that, under the unusual circumstances of this case, the question of whether Collins was justifiably on notice of the presence of an asbestos related injury, and its causation, turned on factual controversies which precluded the grant of summary judgment. Accordingly, we reverse.

I
Our standard of review in an appeal from the grant of summary judgment is de novo. Merrill v. Crothall-American, Inc., Del.Supr., 606 A.2d 96, 99 (1992). We view the facts from a perspective which favors the non-movant, Collins. Id. at 99-100.
Collins had been employed with E.I. DuPont de Nemours & Co. ("DuPont") for more than forty years at its Deepwater, New Jersey facility as a pipefitter and supervisor. His work brought him into contact with asbestos products of various types. For several years prior to his 1982 retirement, he experienced both physical and emotional difficulties. In 1980, as a result of a gastrointestinal attack, Collins was hospitalized in New York. At that time, Dr. Robert Litman performed certain diagnostic tests out of concern that Collins' work history of asbestos exposure might lead to a diagnosis of asbestosis or other pulmonary involvement. All tests were negative, however, and no formal diagnosis of asbestosis was made. Nonetheless, Dr. Littman's discharge report, dated January 27, 1980, contained an entry of "suspected pulmonary asbestosis."
Following his release from the hospital, Collins returned to work at DuPont although he continued to have anxiety about possible asbestosis-related ailments. In March, 1980, he consulted Dr. Neeld, a company physician about a possible medical pension. Dr. Neeld examined Collins' work history, secured his outside medical history and conducted pulmonary function testing. Dr. Neeld concluded: "It is my opinion that the man has neither pulmonary abnormalities nor functional abnormalities. Therefore one cannot incriminate asbestos for a non-existent medical entity." Dr. Neeld sent a memorandum to Collins' supervisor indicating "no asbestos-related disease."
Collins continued to complain to DuPont about gastrointestinal and emotional problems but was unsuccessful in receiving a medical pension. He retired on a longevity pension in 1982. In 1985, at the request of his family physician Collins underwent a chest x-ray with a private radiologist. The radiologist's report recited in part: "The lung fields show no evidence of pneumonia consolidation, active acid fast infection or other active pathological process. There is no significant pleural reaction." In early 1992, apparently at the suggestion of counsel whom he had consulted, Collins was examined by Dr. Susan Daum, a specialist in asbestos-related diseases. After testing and examination of chest x-rays, Dr. Daum concluded that Collins "has pulmonary and pleural asbestosis." This action was filed on September 30, 1992, naming as defendants various manufacturers and suppliers of asbestos products to DuPont during Collins' employment. Collins also named DuPont as *162 a defendant, alleging that it had intentionally concealed from him the dangers of asbestos.
In the course of discovery, the defendants deposed Collins who gave answers which were somewhat inconsistent. He claimed that he was under the belief in 1980 that he had asbestosis based on what Dr. Litman told him, but none of the objective tests performed by Dr. Litman or DuPont confirmed the disease.
Collins also testified that he consulted an attorney in New York about his situation. The results of that consultation were not revealed, but for present purposes no adverse inference can be drawn from that fact. While defendants argue that Collins' actions in consulting with an attorney indicates an awareness of a nexus between his physical condition and his work history of asbestos exposure, it is equally inferable that his New York counsel advised him that without medical verification he had no basis to bring suit.[1]
In moving for summary judgment, the defendants argued that Collins' persistent belief that he had an asbestos-related ailment in 1980 required him to assert his claim within the ensuing two year period. In a bench ruling granting summary judgment in favor of the defendants, the Superior Court agreed:
There's no doubt that this man thought that he had asbestosis and whether that ultimately was right or wrong, at that particular point in time he had a duty to investigate it or to find out that what the true facts were. And I think that his relying on the fact that his employer told him he didn't and that he didn't believe his employer isn't good enough.

II
Fixing the period of limitations in asbestos exposure cases is often problematic because of the acknowledged latency period in the development of diseases associated with asbestos. Bendix Corp. v. Stagg, Del.Supr., 486 A.2d 1150, 1152 (1984). The presence of "an inherently unknowable injury to a blamelessly ignorant plaintiff" prompted this Court to extend to latent disease cases the time of discovery standard adopted in Layton v. Allen, Del.Supr., 246 A.2d 794 (1968), a medical malpractice case, and applied thereafter to a variety of claims not known to an unsuspecting plaintiff. Isaacson, Stolper & Co. v. Artisans' Sav. Bank, Del.Supr., 330 A.2d 130 (1974) (accounting malpractice); Pioneer Nat'l Title Ins. Co. v. Child, Inc., Del.Supr., 401 A.2d 68 (1979) (attorney malpractice).
The two year period of limitations set forth in 10 Del.C. § 8119 governing personal injury claims is applicable to asbestos-related diseases or ailments. The period begins to run when the plaintiff is chargeable with knowledge that his condition is attributable to asbestos exposure. A plaintiff who seeks to toll the statutory period through reliance on the discovery rule must show that he "acted reasonably and promptly in seeking a diagnosis and in pursuing the cause of action." In re Asbestos Litig., West Trial Group, Del.Super., 622 A.2d 1090, 1092 (1992). Mere exposure to asbestos accompanied by symptomatology associated with asbestosis may not suffice, however, to render a plaintiff chargeable with knowledge that his harm is attributable to asbestos exposure where there is uncertainty in medical diagnosis. See Sheppard v. A.C. & S. Co., Del.Super., 498 A.2d 1126, 1130-31 (1985), aff'd sub *163 nom. Keene Corp. v. Sheppard, Del.Supr., 503 A.2d 192 (1986) (en banc).
The determination of when the statute of limitations commences in latent disease cases is necessarily an individual one. Among the factors to be considered are: (1) the plaintiff's level of knowledge and education; (2) the extent of his recourse to medical evaluation; (3) the consistency of the medical diagnosis; and (4) plaintiff's follow-up efforts during the period of latency following initial recourse to medical evaluation. These inquiries are, by nature, fact-intensive and are subject to disposition as a matter of law only where the facts, viewed in favor of the non-movant, predominate toward the conclusion that the plaintiff is chargeable with knowledge that his harmful physical condition was attributable to asbestos exposure.
This case presents the unusual situation of a plaintiff who had a strong subjective belief that he had contracted an asbestos-related disease but lacked any objective medical support for his concern. Under the Superior Court ruling, such a plaintiff would be required to file his complaint based on the strength of his belief alone. In our view, such a result is not supportable under Delaware decisional law and represents an impermissible application of the standards governing summary judgment. While Collins' belief concerning his physical condition from 1980 onward is difficult to ascertain from a discovery record marked by inconsistencies and revisions, the medical record is uncontradicted. Prior to Dr. Daum's evaluation in 1992, every diagnostic test performed on Collins failed to find any link between his physical condition and asbestos exposure. The mere fact that Collins did not agree with those findings does not render them less credible. In the absence of a medically verifiable basis for his belief, however strongly held, Collins lacked an essential element for the bringing of suit: the onset of "physically ascertainable" effects. Stagg, 486 A.2d at 1153. The present record would therefore clearly support the inference that Collins' actions were reasonable in not commencing this suit until 1992.
The time "when the harmful effect first manifested itself, and became ascertainable is a question of fact which is to be determined on a case by case basis by the Trial Court." Id. When either plaintiff's knowledge or the reasonableness of his actions are in dispute in the light of conflicting evidence in the record the issue is best left to the jury. It is only when the record is uncontroverted that the plaintiff "discovered" his injury more than two years prior to the filing of suit that summary judgment is appropriate. West Trial Group, Del.Super., 622 A.2d at 1092.
Where the record for summary judgment purposes is incomplete or conflicting, issues turning on knowledge are not subject to disposition as a matter of law. In Cole v. Delaware League for Planned Parenthood, Del.Supr., 530 A.2d 1119 (1987), a medical malpractice case, this Court reversed the trial court's grant of summary judgment with respect to a patient's knowledge of a physician's conduct because the record was inadequate to support the ruling. In particular this Court was troubled by a conflict between plaintiff's deposition testimony and her treating physician's medical reports. Id. at 1126. Similarly, in Walls v. Abdel-Malik, Del. Supr., 440 A.2d 992 (1982), which involved a fraudulent concealment claim, this Court held that a fact question remained regarding whether or not the plaintiffs exercised due diligence in pursuing their claim. Id. at 997.
Our ruling that the latency/symptomatology configuration in asbestos cases requires that disputes concerning a plaintiff's knowledge should be reserved to the trier of fact where the facts are controverted finds support in other jurisdictions. Nolan v. Johns-Manville Asbestos, Ill.Supr., 421 N.E.2d 864, 868-69 (1981) (the "question of when a party knew or reasonably should have known both of an injury and its wrongful cause is one of fact, unless the facts are undisputed and only one conclusion may be drawn from them"); Biesterfeld v. Asbestos Corp. of America, N.D.Supr., 467 N.W.2d 730, 738 (1991) (plaintiff's knowledge is a question of fact); Lundy v. Union Carbide Corp., 9th Cir., 695 F.2d 394, 396-97 (1982) (summary judgment improper where plaintiff "presented sufficient evidence to permit a trial on when he knew he had a permanent injury due to asbestosis caused by the defendant"); Miller v. Armstrong World Inc., 10th Cir., 949 F.2d 1088, *164 1092 (1991) ("recogniz[ing] that both the relationship between asbestos-related pleural diseases and asbestosis and when plaintiff's asbestosis became manifest are factual questions").
We conclude that Collins' subjective belief that he had an asbestos related ailment, in the absence of medical diagnostic support, did not, as a matter of law, require him to file suit prior to 1992. Accordingly, the grant of summary judgment in favor of the defendants was in error.
The decision of the Superior Court granting summary judgment in favor of the defendants on the basis of the statute of limitations is REVERSED and this matter is REMANDED to the Superior Court for further proceedings consistent with this opinion.
NOTES
[1] Following Collins' deposition he executed an errata sheet which significantly altered the effect of certain answers given during the deposition. The use of errata sheets is apparently commonplace in asbestos litigation and permitted under the standing orders which govern asbestos litigation in the Superior Court. Here, the Asbestos Master, upon motion, refused to strike the errata sheets but did strike Collins' affidavit filed subsequent to his deposition in which Collins attempted to "clarify" what Dr. Litman told him. Contradictory answers in the course of discovery may be used for impeachment purpose at trial, but such inconsistency in the discovery record also serves to furnish the basis for consideration of motions for summary judgment. To the extent inconsistencies exist, the non-movant is entitled to the benefit of the favorable version in resisting summary judgment. For this reason, the power to strike discovery responses should be exercised with caution and limited to egregious cases. Here, the striking of certain of Collins' post-deposition clarifications while simultaneously permitting changes through the errata sheets has presented a very unclear record for summary judgment purposes.