Paul DaBALDO, Jr., and Marlene DaBaldo, Plaintiffs Below, Appellants,

v.

URS ENERGY & CONSTRUCTION, FKA Washington Group International, as successor to Raytheon Constructors, FKA Catalytic, Inc., and Crane Co., Defendants Below, Appellees.

No. 254, 2013.

Supreme Court of Delaware.

Submitted: Jan. 15, 2014.
Decided: Feb. 7, 2014.

Thomas C. Crumplar, Esquire (argued), Jacobs & Crumplar, P.A., Wilmington, Delaware, for appellants.

Joel M. Doner, Esquire (argued) and Christopher C. Popper, Esquire, Eckert Seamans Cherin & Mellott, LLC, Wilmington, Delaware, for appellee, URS Energy & Construction.

Nicholas E. Skiles, Esquire, Francis C. Gondek, Esquire and Patrick M. Brannigan, Esquire, Swartz Campbell LLC, Wilmington, Delaware, for appellee, Crane Co.

Before HOLLAND, BERGER and RIDGELY, Justices.

HOLLAND, Justice:

The plaintiffs-appellants, Paul Dabaldo, Jr. ("DaBaldo") and Marlene DaBaldo, filed a complaint against nineteen defendants, including the defendant-appellee, URS Energy & Construction, f/k/a/ Washington Group International, as successor to Raytheon Constructors, f/k/a/ Catalytic, Inc. and Crane Co. (collectively the "Defendants"). The complaint alleged that DaBaldo developed "pulmonary asbestosis; asbestosis" as a result of exposure to asbestos and sought recovery for those alleged injuries. After the completion of discovery, the Defendants moved for summary judgment arguing that the DaBaldos' claims were barred under title 10, section 8119 of the Delaware Code, the two-year statute of limitations applicable to personal injury claims. The Superior Court heard oral argument on the Defendants' motions for summary judgment and granted them,

ruling from the bench that the DaBaldos' claims were time-barred.

In this appeal, the appellants submit that their 2009 complaint was timely filed. The record supports that assertion. Therefore, the judgment of the Superior Court must be reversed.

### Facts

DaBaldo worked at the Getty Tidewater Oil Refinery in Delaware from 1967 to 2001. In 1992, DaBaldo's primary care physician, Dr. William Nottingham, suggested that DaBaldo receive a chest x-ray. On August 19, 1992, Dr. Majid Mansoory, a radiologist with Papastavros Associates Imaging, interpreted the chest x-ray and sent a report of his findings to Dr. Nottingham (the "1992 X–Ray Report"). The 1992 X–Ray Report revealed "bilateral calcified pleural plaques suspicious for asbestosis [sic] exposure." There is no evidence in the record that DaBaldo received a copy of the 1992 X–Ray Report. Dr. Nottingham discussed the results with DaBaldo and told him that he had asbestos-related pleural plaque.

Shortly after the 1992 X–Ray Report, DaBaldo underwent a CT Scan of his chest on October 16, 1992. Dr. Myung Lee, a radiologist with Diagnostic Imaging Associates, P.A. ("Diagnostic Imaging"), interpreted the CT Scan and sent a report (the "1992 CT Scan Report") to Dr. Nottingham dated October 19, 1992. The report found "[m]ultiple short segments of calcified or non-calcified pleural plaques in the anterior and posterior pleural surfaces of both hemithoraces. These are consistent with mild degree of *asbestos related pleural disease.*" There is no evidence in the record that DaBaldo received a copy of the 1992 CT Scan Report.

After Dr. Nottingham received the 1992 CT Scan Report, he sent a letter to DaBaldo, dated October 22, 1992, in which he wrote that "[t]here seems to be little doubt that there is a mild degree of *asbestos related pleural disease which had been seen originally on the plain chest x-ray.*" Dr. Nottingham also discussed the results with DaBaldo at which time he informed DaBaldo that he had asbestos-related pleural plaque. The letter further suggested that DaBaldo undergo a series of pulmonary function tests (PFTs) to set a baseline for his lung functioning. DaBaldo underwent the PFTs on December 8, 1992. The accompanying report prepared by Dr. Clifton Hunt indicated normal lung functioning and did not mention any disease.

DaBaldo continued to visit his primary care physician periodically. He received another chest x-ray in 1999 which was interpreted by Dr. Philip Chao, a neuroradiologist also with Diagnostic Imaging, in a report dated July 29, 1999 (the "1999 X–Ray Report"). This report, which was ultimately sent to DaBaldo's primary care physician, Dr. Wesley Young,[1] indicated a *"Known history [of] asbestosis."* Other parts of the report revealed *"multipled calcified pleural plaques"* which were "suggestive of asbestosis." Ultimately, the "[f]indings [were] compatible with given history of asbestosis." There is no evidence in the record that DaBaldo ever saw the 1999 X–Ray Report.

About two years later, DaBaldo underwent a follow-up chest x-ray. This x-ray was interpreted again by Dr. Lee, who sent a report to Dr. Young on June 27, 2001 (the "2001 X–Ray Report"). The 2001 X–Ray Report concluded: "The findings are consistent with *asbestos related*

---

1. At this point, DaBaldo had changed doctors and was seeing Dr. Wesley Young as his primary care physician.

*pleural disease* with no significant interval change since 7/28/99."

In 2005 Dr. Lee interpreted another follow-up chest x-ray and issued a report dated October 18, 2005 (the "2005 X–Ray Report"). Dr. Lee found "[n]o interval change in the size and contour of pleural calcification since the study of June 27, 2001."

Sometime in 2007, DaBaldo ran into a former co-worker in the lobby of another medical facility.[2] The co-worker mentioned that he had been diagnosed with asbestosis and recommended that DaBaldo contact the law firm of Jacobs and Crumplar. DaBaldo contacted the law firm, which referred DaBaldo to Dr. Orn Eliasson.

On June 26, 2007, Dr. Eliasson conducted a complete history and physical exam of DaBaldo. About one week later, he issued a report (the "2007 Report"). The report listed "asbestosis" as the diagnosis and stated that the "chest x-ray show[ed] extensive bilateral interstitial fibrosis and bilateral calcified pleural plaques, all of which were caused by his asbestos exposure to a reasonable degree of medical certainty."

On May 5, 2009, DaBaldo filed a personal injury complaint in Superior Court naming URS Energy & Construction and Crane Company as defendants. The complaint sought to hold his employer as well as the asbestos manufacturers, sellers, distributors, and installers liable for causing his asbestosis. After discovery concluded, the Defendants moved for summary judg-

ment, arguing that title 10, section 8119 barred DaBaldo's claims as untimely.

On April 9, 2012, after hearing oral argument on the statute of limitations issue, the Superior Court held that DaBaldo's claims were time-barred and granted the Defendants' motion for summary judgment. DaBaldo's motion for reargument was denied, and a final order was entered on April 22, 2013. DaBaldo now appeals the Superior Court's grant of the Defendant's motion for summary judgment.

### *Plaintiffs' Contentions*

DaBaldo contends that the Superior Court's bench ruling was based upon "disease confusion." Delaware is a multi-disease jurisdiction.[3] This means that each distinct disease caused by asbestos exposure is subject to its own statute of limitations. DaBaldo argues that because he was diagnosed only with pleural disease in 1992 and had no knowledge or reason to suspect he also had asbestosis until 2007, his claim should not be time-barred.

According to DaBaldo, the Superior Court erred when it concluded that DaBaldo was on inquiry notice of his asbestosis as early as 1992 and not later than 1999. DaBaldo argues that he meets the factors for the *In re Asbestos Litigation*[4] discovery rule that would effectively toll his claim until he first learned of his asbestosis diagnosis in 2007. In *In re Asbestos Litigation,* this Court held that a plaintiff cannot be on inquiry notice for a disease he does not have, even if the plaintiff subjectively believes he has the disease.[5]

---

**2.** Neither individual was present in the medical facility for his own symptoms. Each was waiting for a relative to complete a procedure.

**3.** *See Sheppard v. A.C. & S. Co.,* 498 A.2d 1126 (Del.Super.Ct.1985), *aff'd sub nom. Keene Corp. v. Sheppard,* 503 A.2d 192 (Del.1986).

**4.** *In re Asbestos Litigation,* 673 A.2d 159 (Del. 1996).

**5.** *Id.* at 164.

### The Defendants' Contentions

The Defendants argue that DaBaldo's testimony and medical records demonstrate that he was on notice of an *asbestos-related disease* in 1992, which gave him until 1994 to file a claim within the statute of limitations. Even if DaBaldo was not on notice in 1992, the Defendants contend that he knew of his *asbestosis* in 1999 according to the 1999 X–Ray Report prepared by Dr. Chao, which indicated a "[k]nown history [of] asbestosis." Because DaBaldo filed his asbestosis claim in 2009, well beyond the statute of limitations for the claims based on his 1999 knowledge, the Defendants argue that his 2009 complaint is time-barred. The Defendants submit that our holding in *In re Asbestos Litigation* is inapposite because DaBaldo knew, based on the 1999 report that he had a history of asbestosis. Finally, the Defendants assert that DaBaldo's "disease confusion" theory is barred by Rule 8 because it was not fairly presented to the Superior Court.

### Standard of Review

■ This Court reviews *de novo* a trial court's grant of a motion for summary judgment, both as to the facts and the law.[6] Thus, this Court must undertake an independent review of the record and applicable legal principles "to determine whether, after viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that no material issues of fact are in dispute and it is entitled to judgment as a matter of law."[7]

### Delaware Is A Multi-disease Jurisdiction

■ Delaware law establishes a two-year statute of limitations on personal injury claims.[8] When it comes to asbestos-related personal injury claims, Delaware is a multi-disease jurisdiction, which means that each distinct diagnosis attributable to asbestos exposure is a separate claim and thus is subject to its own statute of limitations.[9] DaBaldo argues that the Superior Court's bench ruling was premised upon "disease confusion" when it barred his claims based on the 2007 asbestosis diagnosis.

The Delaware Superior Court first recognized the application of a multi-disease approach in *Sheppard v. A.C. & S. Co.*[10] In that case, the plaintiff had been exposed to asbestos while an employee of DuPont and was diagnosed with pleural thickening and asbestosis. Although both diagnoses were asbestos-related, the Superior Court held that the statute of limitations began to run at different times for each diagnosis based upon the plaintiff's knowledge. In doing so, the Superior Court recognized the "injustice that the doctrine of the indivisibility of a cause of action works upon the plaintiff who suffers a series of asbestos-related diseases over time as a result of the life-consuming maturation of the harm from

---

6. *See State Farm Mut. Auto. Ins., Co. v. Davis,* 80 A.3d 628, 632 (Del.2013); *GMG Capital Investments, LLC v. Athenian Venture Partners, L.P.,* 36 A.3d 776, 779 (Del.2012); *Motorola, Inc. v. Amkor Technology, Inc.,* 849 A.2d 931, 935 (Del.2004); *United Vanguard Fund, Inc. v. TakeCare, Inc.,* 693 A.2d 1076, 1079 (Del. 1997).

7. *United Vanguard Fund, Inc. v. TakeCare, Inc.,* 693 A.2d at 1079.

8. Del.Code Ann. tit. 10, § 8119.

9. *See Sheppard v. A.C. & S. Co.,* 498 A.2d 1126 (Del.Super.Ct.1985), *aff'd sub nom. Keene Corp. v. Sheppard,* 503 A.2d 192 (Del.1986).

10. *Sheppard v. A.C. & S. Co.,* 498 A.2d 1126 (Del.Super.Ct.1985).

asbestos exposure."[11] The Superior Court posed the following hypothetical to illustrate the problems with an indivisible cause of action rule in such cases:

An example of this would be a plaintiff who contracts asbestosis (with an average latency period of 17 years) and later also contracts mesothelioma (with an average latency period of 25–40 years). In such cases, if the plaintiff is held to have a single, indivisible cause of action, the statute of limitations begins to run against all claims resulting from asbestosis exposure when the plaintiff is chargeable with knowledge that his physical condition is attributable to asbestos exposure; in the hypothetical case of a plaintiff suffering from asbestosis, and, later, mesothelioma, the "physical condition" which first manifests itself would likely be the asbestosis. The plaintiff would then find himself forced to assert in one cause of action his claims from all current and prospective harm. However, Delaware law requires that proof of damages for the future consequences of tortuous injuries must be established with reasonable probability of the nature and extent of those consequences. The hypothetical plaintiff would, therefore, probably not be able to meet the burden of proof for the future harm caused by the mesothelioma.[12]

The Superior Court went on to identify a "non-exhaustive list of asbestos-related diseases"[13] and noted that "[e]ach of the diseases, i.e., pulmonary asbestosis, asbestos-related pleural disease, lung cancer, and mesothelioma, is recognized as a separate, and distinct disease."[14]

■ This Court affirmed the Superior Court's *Sheppard* decision in *Keene Corp. v. Sheppard*.[15] Subsequent Delaware cases have recognized and applied the multi-disease analysis.[16] Accordingly, DaBaldo's claim based on the pleural disease diagnosis is separate from his claim based on the asbestosis diagnosis for the purposes of the statute of limitations in this case.

The Defendants' argument that Rule 8 bars this Court's consideration of a "disease confusion" theory on appeal is not

11. *Id.* at 1134.

12. *Id.* at 1132 (citations omitted).

13. The Superior Court categorized a non-exhaustive list of asbestos-related diseases for purposes of clarification:

I. *Nonmalignant diseases.*
A. Pulmonary asbestosis/Parenchymal asbestosis.
B. Asbestos-related pleural disease/Pleural asbestosis. Pleural thickening is one major development of asbestos-related disease. Other manifestations not germane to this inquiry include pleural effusion, hyaline plaques, and calcified plaques.
II. *Malignant diseases.*
A. Lung cancer/Pulmonary carcinoma/Bronchogenic carcinoma.
B. Mehothelioma (tumor of the mesothelial surface).

*Id.* at 1128 n. 3.

14. *Id.*

15. *Keene Corp. v. Sheppard,* 503 A.2d 192 (Del.1986).

16. *See, e.g., Brown v. E.I. duPont de Nemours and Co.,* 820 A.2d 362, 368 n. 23 (Del.2003); *Farrall v. A.C. & S. Co.,* 586 A.2d 662, 667 (Del.Super.1990) ("This issue centers on the unusual rule of law which has developed in dealing with asbestos claims that identifies separate asbestos-related diseases and treats each disease independently for filing claims and for awarding damages"); *Bradley v. A.C. & S. Co.,* 1990 WL 123017, at *2 (Del.Super.Ct. July 17, 1990) ("Delaware decisions have attributed to each of the several diseases separate recognition under which progression from one disease to another gives rise to a new cause of action carrying its own right of recovery").

supported by the record. A central theme presented by DaBaldo in the trial court at oral argument on the summary judgment motion was the differentiation between pleural disease and asbestosis diagnoses.

### Asbestosis Complaint Timely

DaBaldo is not making a claim for damages based upon his diagnosis of asbestos-related pleural disease. In fact, he readily admits that because he was diagnosed with pleural disease in 1992, the statute of limitations for his claim ran in 1994. Thus, the only issue before this Court is when DaBaldo was on notice of his asbestosis diagnosis for the purposes of the two-year statute of limitations.

The two-year statute of limitations on asbestos-related personal injury claims "begins to run when the plaintiff is chargeable with knowledge that his condition is attributable to asbestos exposure." [17] In latent disease cases, the plaintiff may toll the commencement of the statute of limitations under the discovery rule if he "acted reasonably and promptly in seeking a diagnosis and in pursuing the cause of action." [18] In order to determine when the statute of limitations begins to run, this Court has adopted a four factor test: "(1) the plaintiff's level of knowledge and education; (2) the extent of his recourse to medical evaluation; (3) the consistency of the medical diagnosis; and (4) plaintiff's follow-up efforts during the period of latency following initial recourse to medical evaluation." [19]

"When either plaintiff's knowledge or the reasonableness of his actions are in dispute in the light of conflicting evidence in the record[,] the issue is best left to the jury." [20] Importantly, mere exposure to asbestos combined with symptoms that resemble an asbestos-related disease, without a definitive medical diagnosis, is not enough to charge the plaintiff with knowledge.[21]

The Superior Court granted Defendants' motion for summary judgment after concluding that "it is very clear from the record, from at least 1992 and—well, perhaps as early as 1992, and certainly no later than 1999, that the plaintiff knew that he had asbestosis, or, at a minimum, was on inquiry notice as to whether he had asbestosis." An examination of the record reflects that the evidence does not support the Superior Court's ruling.

First, there is no evidence in the record to suggest that DaBaldo's level of knowledge or education was anything more than average. He is not alleged to have a college degree, much less any kind of professional or graduate degree. Certainly, there is no evidence to suggest that he has any specialized knowledge related to asbestos or asbestos-related diseases.

Second, DaBaldo visited his primary care physician, Dr. Nottingham in 1992 as part of a routine check-up. At that visit, Dr. Nottingham ordered a chest x-ray after noticing that DaBaldo did not have one in his file. DaBaldo's initial visit to Dr. Nottingham was not in response to any asbestos-related symptoms or concerns.

17. *In re Asbestos Litigation*, 673 A.2d 159, 162 (Del.1996).

18. *Id.* (quotation marks omitted).

19. *Id.* at 163.

20. *Id.* (citations omitted).

21. *Id.* ("Mere exposure to asbestos accompanied by symptomatology associated with asbestosis may not suffice, however, to render a plaintiff chargeable with knowledge that his harm is attributable to asbestos exposure where there is uncertainty in medical diagnosis").

Moreover, after discussing the results with Dr. Nottingham, DaBaldo followed the advice of his doctor, undergoing PFTs and continuing to monitor his pleural disease with follow-up x-rays and CT Scans.

Third, DaBaldo's diagnoses are largely consistent. The 1992 X–Ray Report and subsequent discussion with Dr. Nottingham showed asbestos-related pleural disease. The 1999 X–Ray Report issued by Dr. Chao revealed "multipled calcified pleural plaques" which were "suggestive of asbestosis." The 1999 X–Ray Report does state a "[k]nown history [of] asbestosis" but the record does not reflect any support for that statement.[22] Nevertheless, that report does not diagnose DaBaldo with asbestosis and there is no evidence in the record showing that DaBaldo received the 1999 X–Ray Report.

The use of the word "asbestosis" in the 1999 X–Ray Report was emphasized by the Defendant URS during summary judgment hearings and found to be significant by the Superior Court. However, there is no indication that this was ever reported to DaBaldo nor was there an actual diagnosis that DaBaldo has asbestosis. A statement that findings are compatible with asbestosis is not equivalent to a medical diagnosis of asbestosis. The disease that DaBaldo was diagnosed with in 1992, and which was reconfirmed in 1999, was pleural disease, not asbestosis.

The 2001 X–Ray Report, was "consistent with *asbestos related pleural disease* " and, importantly, found no significant change since the 1999 x-ray. A follow-up x-ray in 2005 found "[n]o interval change in the size and contour of pleural calcification since the study of June 27, 2001." It was not until Dr. Orn Eliasson's 2007 evaluation that DaBaldo was diagnosed with asbestosis.

The medical history of the plaintiff in *Sheppard v. A.C. & S. Co.*[23] is similar to DaBaldo's medical history. Both plaintiffs worked with asbestos and were seen by several physicians who concluded that each had pleural disease before they were ultimately diagnosed with asbestosis.[24] Both had medical reports that use the term asbestosis when neither in fact had asbestosis.[25] The record reflects that DaBaldo was on notice that he had asbestosis only after he was actually diagnosed with asbestosis by Dr. Eliasson in 2007.

Our analysis of the four factors demonstrates that the statute of limitations on DaBaldo's asbestosis claim did not begin to run until July 2007, when DaBaldo learned for the first time of his asbestosis. Therefore, his complaint was timely when it was filed on May 5, 2009.

---

**22.** The term asbestosis, however, has been the source of confusion among medical professionals:

> [M]edical personnel may refer to "asbestosis" when they clearly intend "pulmonary asbestosis." Pleural thickening or asbestos-related pleural disease, on the other hand, appear to be the preferred terms rather than pleural asbestosis. The Court is satisfied that, in the medical records before the Court in this case, the term "asbestosis" refers to pulmonary asbestosis; that "pleural thickening" and "asbestos-related pleural disease" are synonymous; and that "pleural thickening" and "asbestos-related pleural disease" refer to a disease separate and distinct from pulmonary asbestosis. The Court finds it ironic, however, that this matter, which turns on medical evidence, is based upon a record replete with such terminology and yet lacks evidence of efforts to distinguish the medical terms.

*Sheppard v. A.C. & S. Co.*, 498 A.2d 1126, 1128 n. 3 (Del.Super.Ct.1985) (citations omitted).

**23.** *Sheppard v. A.C. & S. Co.*, 498 A.2d 1126 (Del.Super. May 16, 1985).

**24.** *Id.* at 1128–29.

**25.** *Id.*

### Conclusion

The judgment of the Superior Court is reversed. This matter is remanded for further proceedings in accordance with this opinion.