# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| **WILLIAM McLAUGHLIN, JR.**, | ) |
| | ) |
| Claimant-Below, | ) C.A. No.: N22A-04-002 FJJ |
| Cross-Appellant | ) |
| | ) CITATION ON APPEAL |
| v. | ) FROM THE DECISION OF |
| | ) THE INDUSTRIAL |
| **C&D CONTRACTORS**, | ) ACCIDENT BOARD OF THE |
| | ) STATE OF DELAWARE |
| Employer-Below, | ) NEW CASTLE COUNTY, |
| Appellant. | ) HEARING NO. 1478363 |

Submitted: December 8, 2022
Decided: December 14, 2022

## OPINION

## UPON CONSIDERATION OF AN
## APPEAL FROM THE INDUSTRIAL ACCIDENT BOARD
## AFFIRMED IN PART AND REVERSED IN PART

*Linda Wilson*, *Esquire*, Marshall, Dennehey, Warner, Coleman & Goggin, 1007 N. Orange Street, Suite 600, Wilmington, DE 19899. *Attorney for C & D Contractors.*

*David Crumplar*, *Esquire*, Jacobs & Crumplar, 750 Shipyard Drive, Suite 200, Wilmington, DE 19801. *Attorney for William McLaughlin, Jr.*

**Jones, J.**

# INTRODUCTION

This cross-appeal of an Industrial Accident Board (the "Board" or "IAB") decision considers a legal issue. Below, the Board found the now-deceased Claimant, William McLaughlin ("Mr. McLaughlin" or the "Estate"), suffered a compensable occupational disease (mesothelioma) as a result of asbestos exposure through his work as a pipefitter for C&D Contractors, Inc. ("C&D"). Mr. McLaughlin died of mesothelioma shortly after diagnosis.

On appeal, this Court must determine the relevant occurrence that triggers survivor's benefits to Mr. McLaughlin's widow. The appeal specifically tasks the Court with answering whether Mr. McLaughlin's average weekly wage, and the maximum weekly rate, should be taken from the date of Mr. McLaughlin's last asbestos exposure (1989) or the date of his mesothelioma diagnosis (2017).

According to C&D, both calculations should flow from the 1989 date of last exposure. The Estate, on the other hand, submits the 2017 date of diagnosis controls the calculations. All told, the Board found: (1) the average weekly wage must be taken from the 1989 date of last exposure, and (2) the maximum weekly rate is taken from the 2017 date of diagnosis. Unhappy with the Board's findings, both parties appeal the IAB order.

Upon careful review of the record, the Court finds the date of diagnosis controls *both* the calculation of the average weekly wage and the maximum rate.

2

Accordingly, the Board's decision must be **AFFIRMED** in part and **REVERSED** in part.

## FACTUAL AND PROCEDURAL BACKGROUND

What follows is an abbreviated factual summary of the case, drawing only on those undisputed facts relevant to the appeal. C&D employed Mr. McLaughlin as a plumber and pipefitter from 1980 to 1989.[1] In its decision, the Board reached (and C&D does not contest) three conclusions as a matter of fact: (1) Mr. McLaughlin suffered his last injurious exposure to asbestos through his C&D employment in 1989; (2) Mr. McLaughlin was not exposed to asbestos after his C&D employment; and (3) Mr. McLaughlin's last injurious exposure to asbestos led to his mesothelioma diagnosis and subsequent death.[2] The parties stipulated that Mr. McLaughlin was diagnosed with mesothelioma on November 20, 2017 and succumbed to the disease on February 24, 2018.[3]

Mr. McLaughlin earned $900.58 per week when he left C&D in 1989.[4] He continued to work until his mesothelioma diagnosis. At the time of diagnosis, Mr. McLaughlin earned an annual salary of over $110,000.[5]

---

[1] *See* IAB Decision at 40.
[2] *See id.* at 46.
[3] *See id.* at 2.
[4] *See id.* at 52.
[5] *See id.*

3

The Estate filed a Petition to Determine Compensation Due to Dependents of a Deceased Employee on November 20, 2018.[6]  Before the Board, the Estate argued Mr. McLaughlin's average weekly wage and compensation rate should be based upon his post-C&D earnings as of the date of his November 2017 mesothelioma diagnosis, yielding a maximum weekly rate of benefits to his widow in the amount of $686.99.  C&D submitted the relevant occurrence to trigger the compensation calculation should be Mr. McLaughlin's average weekly wage at the time of his last exposure to asbestos – $900.58 – and subject to the maximum rate of $280.64 in effect in 1989.

The Board issued its findings on March 14, 2022, entitling Mr. McLaughlin's widow to death benefits based upon the maximum compensation rate in effect at the time of his November 2017 mesothelioma diagnosis.  The Board, however, did not calculate benefits based on the 2017 weekly wage rate; instead, it used the weekly wage rate in place at the time of Mr. McLaughlin's last asbestos exposure in 1989.  C&D filed a timely appeal, and the Estate cross-appealed shortly thereafter.

## STANDARD OF REVIEW

When an employee suffers compensable occupational injury, Delaware law requires the employer to pay for reasonable and necessary medical "services,

---

[6] *See id.* at 2.

4

medicine, and supplies" causally connected with that injury.[7] The employee seeking compensation bears the burden of proving, by a preponderance of the evidence, that a work-related accident caused the injury.[8]

On appeal from the IAB, the Superior Court limits its review to determining whether the Board's decision was free from legal error and supported by substantial evidence.[9] "Substantial evidence is that which 'a reasonable mind might accept as adequate to support a conclusion.' It is a low standard to affirm and a high standard to overturn."[10] Thus, the Court must search the entire record to determine whether, based on all the testimony and exhibits, the Board could fairly and reasonably reach its conclusions.[11] However, the Court "does not sit as trier of fact with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions."[12] It is solely within the purview of the Board to judge credibility and resolve conflicts in testimony.[13] Where substantial evidence supports the administrative decision, the Court must affirm the ruling unless it identifies an abuse of discretion or clear error of law.[14] Questions of law are reviewed *de novo*.[15]

---

[7] 19 *Del. C.* § 2322.

[8] *See Coicuria v. Kauffman's Furniture*, 1997 WL 817889 at *2 (Del. Super. Oct. 30, 1997), *aff'd*, 706 A.2d 26 (Del. 1998).

[9] *See Glanden v. Land Prep, Inc.*, 918 A.2d 1098, 1100 (Del. 2007). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Oceanport Indus. v. Wilmington Stevedores*, 636 A.2d 892, 899 (Del. 1994).

[10] *Hanson v. Delaware State Public Integrity Comm'n.*, 2012 WL 3860732 at *7. (Del. Super. Aug. 30, 2012).

[11] *See Nat'l Cash Register v. Riner*, 424 A.2d 669, 674-75 (Del. 1980).

[12] *Johnson v. Chrysler Corp.*, 214 A.2d 64, 67 (Del. 1965).

[13] *See id.*

[14] *See Munyan v. Daimler Chrysler Corp.*, 909 A.2d 133, 136 (Del. 2006).

[15] *See id.* Absent an error of law, the Court reviews the Board's decision for abuse of discretion. The Court will find abuse of discretion only when the Board's decision exceeds the bounds of reason when considering the circumstances.

## ANALYSIS

### A. The Rate Must Be Calculated from the Date of Disease Diagnosis

Pursuant to the Delaware Workman's Compensation Statute (the "Act"), an employee who suffers from, and is totally disabled by, compensable occupational is entitled to benefits in the amount of two-thirds of his weekly wage.[16] Additionally, the Act establishes a maximum weekly rate by which the wage is to be calculated.[17] This rate is adjusted annually.[18] On appeal, this Court must determine whether the average weekly wage and maximum rate are calculated from the date of last injurious exposure or the date of occupational disease diagnosis.

The Act provides workers suffering from occupational disease with the same rights to seek compensation as workers who suffer physical injury on the job.[19] Under the Act, "injury" is defined as:

> [V]iolence to the physical structure of the body, [or] such disease or infection as naturally results directly therefrom when reasonably treated, and compensable occupational diseases … arising out of and in the course of employment.[20]

---

*See Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009); *see also Stanley v. Kraft Foods, Inc.*, 2008 WL 2410212, at *2 (Del. Super. March 24, 2008).

[16] *See* 19 *Del. C.* § 2302; s*ee also* 19 *Del. C.* 2301(4) (defining "compensable occupational disease" as "all occupational diseases arising out of, and in the course of, employment only when the exposure stated in connection therewith occurred during employment.").

[17] *See* 19 *Del. C.* § 2302(b)(3).

[18] *See id.*

[19] *See* 19 *Del. C.* § 2328; *see also Dravo Corp. v. Strosnider*, 45 A.2d 542, 544 (Del. 1945) (finding a work-related event that caused injury to be a prerequisite for Delaware workman's compensation claims).

[20] *See* 19 *Del. C.* 2301(16).

The Delaware Supreme Court summarized the Act's occupational disease evolution in *Champlain Cable Corporation v. Employers Mutual Liability Insurance Company of Wisconsin*.[21]  Charged with determining whether the 1974 amendments to the Act overruled the last injurious exposure rule, *Champlain* answered in the negative:

> In light of our conclusion, we find Champlain's argument for overruling *Cicamore* on the basis of the 1974 legislation to be without merit.  Clearly, Justice Carey, writing for the Court, premised the decision upon the statutory emphasis on *disability* as the determinant of coverage for occupational diseases.  This reliance continues to be well-founded, as evidenced by the notice and limitations statutes, and reflects the acknowledged distinction in injuries involving violence to the physical structure of the body and those resulting from repeated exposure to toxic materials.  We are satisfied that this disability orientation was not altered by the deletion of the five-month time constraint.  As previously stated, the amendment to § 2301(4) merely broadened employee coverage for continuous exposure diseases by not predicating recovery on the time of clinical diagnosis. We conclude, therefore, that "injury", in the context of occupational diseases, is still determined as of the date of "disability" ....[22]

*Champlain* directs this Court to determine the occupational disease benefit rate at the date of *disability*, not *exposure*.  Thus, a workman's compensation claim based on asbestos exposure must be supported by a diagnosis of occupational disease.  This date of diagnosis triggers the rights to benefits under the Act.

---

[21] 479 A.2d 835 (Del. 1984).
[22] *Id.* at 841-42.

7

Before *Champlain*, this Court confronted a factual scenario similar to the present matter in *E.I. Dupont de Nemours & Co. v. Taylor*.[23] As is the case here, *Taylor* tasked this Court with determining the proper time to calculate the rate of compensation in an occupational disease case.[24] The *Taylor* employer argued the date of *exposure* was the appropriate trigger to determine the average weekly rate and the maximum rate; the employee, on the other hand, maintained the date of *diagnosis* controlled. Siding with the employee, Judge Walsh explained:

> An occupational disease cannot be dealt with in the same manner as can an industrial injury caused by an identifiable incident. [The] various provisions [of the Workman's Compensation Act] indicate a legislative recognition that, for many purposes, violence to the physical structure of the body cannot be dealt with in the same way as disease. Proof of place and cause of occupational disease may not prove difficult if one has worked for a single employer over a long period of time, but proof of the time disease began may be either swift or slow. Here, the time of disability caused by asbestosis must be determined. When a disease is progressive, such as asbestosis, exposure to the disease-causing substance may, in the early stage of the disease, cause injury which is not apparent, even to the worker so affected. Disability, in a medical sense, may be established by medical testimony that a claimant cannot work, although in fact the claimant may actually be working by sheer determination and ingenuity.
>
> Occupational disease cases typically show a long history of exposure without disability culminating in the forced cessation of work on a definite date. In this case, claimant

---

[23] Del. Super. N82A-OC-4.

continued to work after his asbestosis was diagnosed by his medical experts and after they urged him to retire. But even the medical experts may disagree on the question of onset of disability. At the Board hearing on January 27, 1982, the medical testimony as to claimant's disability was wide-ranging. Claimant's experts testified that he was totally disabled and had a 70 percent impairment to each lung, while one of employer's experts testified that claimant was able to work and had no impairment to his lungs. This diversity of medical opinion illustrates the difficulty in ascertaining the progression of occupational disease.

* * *

To hold that the rate of compensation for disability caused by an occupational disease should be calculated from the date of actual cessation of work, resulting from the disease rather than the date of injury, is consistent with the manifestation rationale of *Cicamore* and *Champlain*. The date of disability, like the manifestation approach to disability, introduces a note of certainty in an area which is ripe with speculation. The Board's use of the date of disability was legally and factually correct. Its decision is accordingly affirmed.

*Champlain* and *Taylor* are consistent with Delaware jurisprudence concerning the statute of limitations in occupational disease cases. In *Bendix Corp. v. Stagg*,[25] the Delaware Supreme Court found the occupational disease statute of limitations tolls when the harmful effect of asbestos exposure first manifests and becomes physically ascertainable.[26] And thirty years after *Bendix*, the Supreme Court rejected the argument that the statute of limitations begins to run immediately after asbestos

---

[25] 486 A.2d 1150 (Del. 1984).
[26] *See id.* at 1153.

9

*exposure* in *Dabaldo v. URS Energy & Construction*.[27]   Rather, as *Dabaldo* announced, the bell tolls when the plaintiff is chargeable with knowledge that his physical condition is attributable to asbestos exposure.[28]

### B. The Public Policy Goals of Multi-Disease Jurisdictions

Moreover, it bears mention that Delaware is a multi-disease jurisdiction.  As such, Delaware plaintiffs may bring multiple claims for different asbestos-related diseases.  The statute of limitations for each claim is based on the date of diagnosis for each disease.

Washington State is also a multi-disease jurisdiction.   In *Kilpatrick v. Department of Labor and Industries of the State of Washington*,[29] the Washington Supreme Court faced the identical issue before this Court.  Finding survivor benefits must be calculated at the date of asbestos-related disease *manifestation*, *Kilpatrick* held:

> The problem with treating a separately occurring asbestos-related disease as an aggravation of the original disease is readily apparent.  Each asbestos-related disease involves a unique pathology, requires a different treatment, and is not, in fact, an aggravation of continuation of a different asbestos-related condition.   Thus, the asbestos-related conditions necessarily involve different dates of injury or manifestation.
>
> Another problem with the Department's approach is that it focuses on the date of exposure, even though *the*

---

[27] 85 A.3d 73 (Del. 2014).
[28] *See id*. at 78.
[29] 125 Wash. 2d 222 (Wash. 1995).

*relevant occurrence for determining benefits is the manifestation of disease, not the date of exposure.* In *Landon*, we noted the shift to the date of manifestation and away from the date of exposure fulfills our statutory mandate of liberal construction to ensure the fair compensation of disabled workers, with all doubts resolved in favor of the employee. In addition, the purpose of workers' compensation benefits is to reflect future earning capacity rather than wages earned in past employment, and the application of outdated benefit schedules fails to fulfill that purpose. The Department's focus on the date of exposure is more likely to cause an outdated schedule of benefits to be applied.

The same reasoning applies here. If the worker were confined to the original date of manifestation, benefits would be determined according to schedules already obsolete under current statutes. This is inconsistent with the purposes of replacing future wages, and the express goal of the workers' compensation act to reduce to a minimum the worker's economic loss. Thus, the policies behind the workers' compensation act, *Landon*'s directive that we focus on the date of manifestation in latent occupational disease cases, and the undisputed medical evidence compel the conclusion that the claimants' final asbestos-induced disease should be accorded its own date of manifestation.[30]

The rationale *Kilpatrick* applies here. Because Washington State and Delaware are multi-disease jurisdictions, the public policy philosophy underlying each state's workman's compensations acts are the same. Therefore, the Court will follow the lead of *Kilpatrick* and *Taylor* and hold the relevant occurrence for determining

---

[30] *See id.* (emphasis added) (internal citations omitted).

benefits is the manifestation of disease, not the date of exposure.[31] This finding is consistent with the goals of the Act, Delaware law, and the multi-disease jurisdictional approach.

### C. The Last Injurious Exposure Rule

The last injurious exposure rule is well-settled Delaware law.[32] In brief, the Delaware Supreme Court adopted the last injurious exposure rule to compensate employees "who were exposed to a disease-causing substance in the course of [their] employment."[33] For purposes of the rule, the employer at "the date of the last exposure to a disease-causing element resulting in *manifestation of injury*" is responsible for providing workmen's compensation benefits to the injured employee.[34]

C&D argues the Court should use the last injurious exposure rule to determine the "time of injury" to Mr. McLaughlin. In making this argument, C&D conflates *last exposure* with *injury*. As explained *supra*, asbestos exposure and time of injury are not necessarily the same in the context of occupational disease cases.

---

[31] *Id.* At the time of the *Champlain* and *Taylor* decisions, the Act imposed a minimum three-day period of disability as a condition precedent to making a claim under the Act. *See Smith v. Feralloy Corp.*, 460 A.2d 516 (Del. 1983); *see also M&M Hunting Lodge v. DiMaio*, 1991 WL 89802 (Del. Super. May 10, 1991) (explaining "… the Court must decide if Claimant has been incapacitated from earning full wages for at least three days."). Disability to work was also an essential element of any workman's compensation claim. The Act no longer requires a period of disability. Thus, the focus now is not on the time of disability, but rather the date of diagnosis.

[32] *See Estate of Anderson v. American Seaboard Exteriors*, 2022 WL 10219998, at *5 (Del. Super. Oct. 18, 2022); *see also State Through Pennsylvania Mfrs. Ass. Inc. Co. v. Dunlop*, 1991 WL 236974, at *2 (Del. Super. Oct. 16, 1991).

[33] *See id.*

[34] *Id.* (emphasis added).

Undoubtedly, both are required for a claim to be mature under the Act. But to tie the manner of payment to the date of last exposure is to ignore that *injury manifestation* is required before compensation is due.

Further, C&D's position is squarely at odds with the purpose of the Act. The Act is a remedial statute designed to protect the worker, and Delaware law mandates the Court interpret the Act liberally to effectuate its remedial objective.[35] This liberal interpretation recognizes that the General Assembly passed the Act for the express purpose of benefitting the worker and requires the Court to resolve any reasonable doubts in favor of the claimant.[36] Otherwise stated, the Act functions to: (1) provide assured compensation for work-related injuries without regard to fault; and (2) relieve employers and employees of the expenses and uncertainties of civil litigation.[37]

Accordingly, the Court builds upon the foundation set forth in *Taylor* and finds the date of injury (or disease) diagnosis to be the triggering event for determining *both* the average weekly wage and maximum rate. This approach best achieves the legislative goal of construing the Act in a manner that best protects the worker.[38]

---

[35] *See Delaware Tire Center v. Dox*, 411 A.2d 606, 607 (Del. 1980).

[36] *See Hirneisen v. Champlain Cable Corp.*, 892 A.2d 1056, 1059 (Del. 2006).

[37] *See Kofron v. Amoco Chem. Corp.*, 441 A.2d 226 (Del. 1982).

[38] C&D argues that using date of diagnosis as the triggering event actually works *against* retired claimants, as this form of calculation would reduce the rate of compensation to a level below the rate that would be paid if the date of last exposure was used. Clearly, C&D's hypothetical is not present in this case. To the extent this is an issue in need of correction in future cases, the proper forum for the matter is the General Assembly, not this Court.

13

## CONCLUSION

Based on the foregoing, the decision of the Board to calculate the average weekly rate based on the date of last exposure is **REVERSED**. The decision of the Board to calculate the maximum rate from the date of diagnosis is **AFFIRMED**.

This matter is **REMANDED** to the Industrial Accident Board for entry of an order consistent with this decision.[39]

---

[39] Any application by the claimant for fees and costs associated with this appeal must be filed within seven (7) days of the date of this opinion. Any responses to such an application should be filed within seven (7) days of claimant's application.