# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| The Estate of GREGORIO SANCHEZ VALDEZ, | ) ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N17C-09-299 ALR |
| | ) | |
| BNSF RAILWAY COMPANY, f/k/a | ) | |
| Burlington Norther and Santa Fe | ) | |
| Railway Company, | ) | |
| Defendant. | ) | |

Submitted: December 3, 2020
Decided: December 15, 2020

*Upon Defendant's Motion for Summary Judgment*
**DENIED**

*Upon Defendant's Motions Addressed to Plaintiff's Liability Expert*
**DENIED**

*Upon Defendant's Motions Addressed to Plaintiff's Medical Causation Expert*
**DENIED**

*Upon Defendant's Motion in Limine to Preclude the Introduction of or Reference to Documents from the American Association of Railroads*
**GRANTED in part; DENIED in part**

A. Dale Bowers, Esquire, Law Office of A. Dale Bowers, P.A., Wilmington, Delaware. Shawn Ricci, Esquire, and Thomas Joyce, Esquire, Bern Cappelli LLC, Conshohocken, Pennsylvania. Attorneys for the Estate of Gregorio Sanchez Valdez.

Maria R. Granaudo Getsy, Esquire, Burns White LLC, Wilmington, Delaware. Camille Reifers, Esquire, Boyle Brasher LLC, Memphis, Tennessee. David A. Damico, Esquire, Burns White LLC, Pittsburgh, Pennsylvania. Attorneys for BNSF Railway Company f/k/a Burlington Northern and Santa Fe Railway Company.

**Rocanelli, J.**

This case involves allegations of exposure to toxic substances in the workplace. From 1996 to 2016, Gregorio Sanchez Valdez ("Valdez") worked as a machinist for Defendant BNSF Railway Company f/k/a Burlington Northern and Santa Fe Railway Company ("BNSF"). On October 9, 2014, Valdez was diagnosed with laryngeal cancer. Valdez alleges that his cancer was the result of his exposure to various toxic substances and carcinogens during the course of his employment with BNSF.

This lawsuit was filed September 29, 2017. Service of process on BNSF was accomplished on July 20, 2018. In the meantime, Valdez died and his estate was substituted as Plaintiff (the Estate of Gregorio Sanchez Valdez is also referenced herein as "Valdez").

Valdez has identified two expert witnesses to support his claims: (i) Philip A. Smith, MPH, Ph.D., CIH, FAIHA, for the standard of care for railroad employers ("Liability Expert") and (ii) Theron Blickenstaff, M.D., M.P.H., F.A.C.E.M., for the causal relationship between Valdez's exposure to toxic substances and his cancer ("Medical Causation Expert").

BNSF seeks summary judgment on the ground that this lawsuit is time-barred. Specifically, BNSF claims that this lawsuit was not commenced until BNSF was served with process. In addition, BNSF challenges Valdez's expert witnesses and seeks orders from the Court limiting and/or precluding the experts' testimony at trial. BNSF also seeks judgment as a matter of law on the grounds that Valdez cannot

1

prove his case without the testimony of the expert witnesses which BNSF seeks to exclude. Valdez opposes BNSF's motions and contends that his lawsuit is not time-barred, and that the opinions of his expert witnesses meet the *Daubert* standard.

## I. Whether This Lawsuit is Time-Barred is Controlled by a Genuine Issue of Material Fact that Must be Submitted to a Jury

The Court may grant summary judgment only where the moving party can "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1] A genuine issue of material fact is one that "may reasonably be resolved in favor of either party."[2] The moving party bears the initial burden of proof and, once that is met, the burden shifts to the non-moving party to show that a material issue of fact exists.[3] At the motion for summary judgment phase, the Court must view the facts "in the light most favorable to the non-moving party."[4] Summary judgment is only appropriate if the plaintiff's claims lack evidentiary support such that no reasonable jury could find in the plaintiff's favor.[5]

BNSF argues Valdez's claim is time-barred under the statute of limitations of the Federal Employers' Liability Act ("FELA") because Valdez failed to serve

---

[1] Del. Super. Ct. Civ. R. 56(c).
[2] *Moore v. Sizemore*, 405 A.2d 679, 680–81 (Del. 1979).
[3] *Id.*
[4] *Brozka v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).
[5] *See Hecksher v. Fairwinds Baptist Church, Inc.*, 115 A.3d 1187, 1200–05 (Del. 2015); *Edmisten v. Greyhound Lines, Inc.*, 2012 WL 3264925, at *2 (Del. Aug. 13, 2012).

BNSF with process within the three-year statute of limitations. This lawsuit was filed September 29, 2017. Service of process on BNSF was accomplished on July 20, 2018.

BNSF claims Valdez's cause of action accrued on October 9, 2014, the date Valdez was diagnosed with laryngeal cancer. According to BNSF, this lawsuit is time-barred because the action was not "commenced" within 3 years of October 9, 2014. Specifically, BNSF argues that, even though the lawsuit was filed within three years of Valdez's diagnosis, because BNSF was not served until ten months later, the lawsuit is time-barred.

FELA suits may not be brought "unless commenced within three years from the day the cause of action accrued."[6] Diligent efforts to serve process are required by federal decisional law[7] as well as Delaware decisional law.[8] In this case, service of process was not accomplished until 10 months after suit was filed.

---

[6] 45 U.S.C. § 56.

[7] *See Herb v. Pitcairn*, 325 U.S. 77, 79 (1945) (explaining that "[a]n action is 'commenced' for [FELA] purposes as a matter of federal law when instituted by service of process issued out of a state court, even if one which itself is unable to proceed to judgment . . . "); *Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424, 428 (1965) (identifying a timely FELA action when (1) plaintiff's complaint was filed in a state court of competent jurisdiction and (2) service of process was made upon the opposing party).

[8] *See Russell v. Olmedo*, 275 A.2d 249, 250 (Del. 1971) ("[O]rdinarily the filing of an action will commence the tolling of the statute of limitations, but that this is subject to the requirement that the plaintiff diligently seek to bring the defendant into court and subject him to its jurisdiction."); *Robertson v. Gest*, 1991 WL 316950, at *2 (Del. 1991) (TABLE) (affirming the Superior Court's ruling that the mere filing of a complaint with a precipice directing the Prothonotary to withhold service pending further instruction failed to toll the statute of limitations).

This lawsuit was filed September 29, 2017. A praecipe was filed with the complaint,[9] but Valdez's counsel did not request issuance of a writ for service of process by the Prothonotary. Shortly after the lawsuit was filed, new counsel was substituted for Valdez. In January 2018, Valdez requested an enlargement of time to serve BNSF, which was granted by Order dated January 17, 2018, but Valdez still did not request that a writ for service of process be issued by the Prothonotary. By letter dated April 18, 2018, Valdez was notified that his lawsuit would be dismissed for want of prosecution pursuant to Rule 41(e) of the Delaware Superior Court Rules of Civil Procedure unless some action was taken within 30 days. No action was taken. The Court entered an Order of dismissal on June 7, 2018.

At that point, counsel for Valdez leaped into action, filing a motion for relief from judgment pursuant to Rule 60(b)[10] and filing a second motion for enlargement of time in which to serve BNSF. The Court conducted a hearing on July 10, 2018. The Court found excusable neglect pursuant to Rule 60(b)(1)[11] as grounds to vacate the Order dismissing the case for want of prosecution.[12] The Court also granted an additional 30 days for Valdez to serve BNSF.[13]

---

[9] Del. Super. Ct. Civ. R. 3(a).
[10] Del. Super. Ct. Civ. R. 60(b).
[11] Del. Super. Ct. Civ. R. 60(b)(1).
[12] *Valdez v. BNSF Ry. Co.*, Del. Super., C.A. No. N17C-09-299, Rocanelli, J. (July 10, 2018) (ORDER).
[13] *Valdez v. BNSF Ry. Co.*, Del. Super., C.A. No. N17C-09-299, Rocanelli, J. (July 10, 2018) (ORDER).

4

On the same day that the Court granted both motions, July 10, 2018, Valdez filed an alias praecipe and alias summons, and Valdez also filed the necessary paperwork to cause the Prothonotary issue a writ for service of process. The writ was issued promptly by the Prothonotary, on July 16, 2018. BNSF was served within just a few days, on July 20, 2018.

Given the delay between filing the lawsuit on September 29, 2017 and service of process on BNSF on July 20, 2018, there may be a question of whether Valdez was sufficiently diligent in commencing this action. However, the question of diligence does not even have to be reached if Valdez's claim accrued within 3 years of the date of service – no sooner than July 20, 2015 – because then the action was commenced in a timely manner even if the date of service of process is considered the commencement date. The question, therefore, is when did Valdez's claim accrue?

In cases such as this, where the plaintiff may have been exposed to toxic substances years before any symptoms arise, the United States Supreme Court has adopted a "discovery rule" for determining the date the cause of action accrued.[14] Under the "discovery rule," the statute of limitations "begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which

---

[14] *See Matson v. Burlington N. Santa Fe R.R.*, 240 F.3d 1233, 1235 (10th Cir. 2001) (citing *United States v. Kubrick*, 444 U.S. 111, 121–23 (1979)).

is the basis of his action."[15] The discovery rule is applicable whether the decisional law under FELA is applied[16] or if Delaware law[17] controls the inquiry.

The question of when Valdez knew or should have known that his laryngeal cancer was the result of exposure to toxic substances in the BNSF workplace is disputed. Where, as here, there is a genuine dispute regarding a material fact, summary judgment is not appropriate. Furthermore, applying the discovery rule requires a fact intensive inquiry that must be submitted to the jury.[18] Therefore, if

---

[15] *Id.* (quoting *Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994)).

[16] *Urie v. Thompson*, 337 U.S. 163, 170 (1949) (explaining that "no specific date of contact with the substance can be charged with being the date of injury, inasmuch as the injurious consequences of the exposure are the product of a period of time rather than a point of time; consequently the afflicted employee can be held to be 'injured' only when the accumulated effects of the deleterious substance manifest themselves"); *United States v. Kubrick*, 444 U.S. 111, 122 (1979) (The Court is "unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain."); *see Kindred v. Burlington N. R.R. Co.*, 742 So.2d 155, 157 (Ala. 1999) (interpreting both *Urie* and *Kubrick* "to mean that a FELA claim accrues, and the statutory period of limitations begins to run, when the plaintiff possess sufficient critical facts from which the injury and its cause, including its work-relatedness, should be plainly known") (internal quotations omitted).

[17] *In re Asbestos Litig. (Collins)*, 673 A.2d 159, 162 (Del. 1996) (explaining that determining the statute of limitations in asbestos exposure cases beings to run "when the plaintiff is chargeable with knowledge that his condition is attributable to asbestos exposure"). *See Hunt v. Union Pac. R.R. Co.*, 2017 WL 5664813, at *3 (Del. Super. Nov. 20, 2017).

[18] *Urie*, 337 U.S. at 171; *Kindred*, 742 So.2d at 159 (reversing and remanding the case to allow the jury to determine the date plaintiff knew he was diagnosed with asbestosis *and* that his asbestosis was work-related); *see also In re Asbestos Litig. (Collins)*, 673 A.2d at 163 (providing that "[w]hen either plaintiff's knowledge or

BNSF wishes to present this factual dispute at trial, then the jury will be asked to apply the discovery rule to determine the date on which Valdez knew or should have known that his cancer was caused by exposure to toxic substances during his employment by BNSF as a machinist.[19]

## II. Valdez's Proposed Expert Witnesses Meet the *Daubert* Standard

### 1. The *Daubert* Standard for Admissibility of Expert Opinions

The admissibility of expert testimony is governed by Delaware Rule of Evidence 702[20] as well as the *Daubert* standard which requires the trial court to

---

the reasonableness of his actions are in dispute in the light of conflicting evidence in the record the issue is best left to the jury[ i]t is only when the record is uncontroverted that the plaintiff 'discovered' his injury . . . that summary judgment is appropriate").

[19] The Court will not determine at this time whether the lawsuit was timely commenced if the jury finds that Valdez knew or should have known that his throat cancer was related to toxic substances in the workplace sometime between October 9, 2014, the date Valdez was diagnosed with laryngeal cancer, and July 20, 2015, which is three years from the date for service of process. However, the Court notes that a finding of excusable neglect was made by the Court in connection with vacating the order of dismissal, which may be controlling as law of the case. *See Frank G.W. v. Carol M.W.*, 457 A.2d 715, 718 (Del. 1983) ("[T]he doctrine of the law of the case normally requires that matters previously ruled upon by the same court be put to rest."). Depending on the jury's ruling, this legal question may be addressed pursuant to Superior Court Civil Rule 50.

[20] A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b) the testimony is based on sufficient facts or data;

    (c) the testimony is the product of reliable principles and methods; and

    (d) the expert has reliably applied the principles and methods to the facts of the case.

D.R.E. 702.

7

determine whether the proposed evidence is both "relevant" and "reliable."[21]  The

reliability prong tests whether an expert has a reliable basis in the knowledge and

experience of the relevant discipline.[22]

In addition to the *Daubert* factors, Delaware requires the trial judge to

consider an additional five-step test to determine the admissibility of expert

testimony.[23]  The trial judge must determine that:

(1) the witness is qualified as an expert by knowledge, skill, experience, training, or education;

(2) the evidence is relevant;

(3) the expert's opinion is based upon information reasonably relied upon by experts in that particular field;

(4) the expert testimony will assist the trier of fact to understand the evidence or determine a material fact in issue; and

(5) the expert testimony will not create unfair prejudice or confuse or mislead the jury.[24]

The party seeking to introduce expert testimony bears the burden of

establishing admissibility by a preponderance of the evidence.[25]  The decision to

---

[21] *Tumlinson v. Advanced Micro Devices, Inc.*, 2013 WL 7084888, at *2 (Del. Super. Oct. 15, 2013) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)).

[22] *See M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 521 (Del. 1999) (adopting the *Daubert* standard as the correct interpretation of Delaware Rule of Evidence 702).

[23] *Id.*

[24] *Id.*

[25] *Pavey v. Kalish*, 2010 WL 3294304, at *3 (Del. Aug. 23, 2010) (TABLE); *Sturgis v. Bayside Health Ass'n*, 942 A.2d 579, 584 (Del. 2007).

admit expert testimony is not a conclusion that the expert's opinion is correct. Rather, the trial judge's role as gatekeeper[26] is limited to determining "whether the proponent of the evidence has demonstrated that scientific conclusions have been generated using sound and reliable approaches."[27] Expert opinions are admissible where they assist the trier of fact in understanding the facts or evidence presented at trial[28] and are otherwise the relevant product of reliable methodology.[29] "Once the trial court has determined that a witness is competent to testify as an expert, challenges to the expert's skill or knowledge go to the weight to be accorded the expert testimony rather than its admissibility."[30] "Weight and credibility challenges, on the other hand, relate to an expert's skill or knowledge in being able to tie the facts of the case to the opinion he or she plans to give."[31]

### 2. Valdez's Liability Expert: Smith, M.P.H., Ph.D., C.I.H., FAIHA.

First, as a threshold matter, BNSF challenges the reliability of Valdez's Liability Expert, Philip Smith. According to BNSF, Liability Expert's opinions are inherently unreliable. The Court is satisfied that Valdez's Liability Expert is an

---

[26] *Sturgis*, 942 A.2d at 583.

[27] *State v. McMullen*, 900 A.2d 103, 114 (Del. Super. 2006) (citing *In re Paoli R. R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)).

[28] *Pavey*, 2010 WL 3294304, at *3; *Ward v. Shoney's, Inc.*, 817 A.2d 799, 803 (Del. 2003); *Sweiger v. Del. Park, L.L.C.*, 2013 WL 6667339, at *4 (Del. Super. Dec. 9, 2013).

[29] *Rodriguez v. State*, 30 A.3d 764, 769 (Del. 2011); *McNally v. State*, 980 A.2d 364, 368 (Del. 2009); *M.G. Bancorporation, Inc.*, 737 A.2d at 521.

[30] *Perry v. Berkley*, 996 A.2d 1262, 1270–71 (Del. 2010) (quoting *Sylla–Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 283 (8th Cir. 1995)).

[31] *Id.* at 1270.

expert qualified by knowledge, skill, experience, training, and education. In addition, the testimony of Liability Expert is relevant and will assist the jury in understanding the evidence and determining a fact in issue. The opinions of Liability Expert are based on information reasonably relied on by experts in the field. The opinion of Liability Expert will not create unfair prejudice or confuse or mislead the jury. Therefore, the testimony of Liability Expert is admissible.

Second, BNSF also submits that it is entitled to summary judgment because Valdez has failed to produce a liability expert competent to testify at trial. In other words, according to BNSF, if the Court agrees and rules in its gatekeeping function that Valdez's Liability Expert does not meet the *Daubert* standard, then judgment should be entered on behalf of BNSF because Valdez cannot present a *prima facie* case at trial without a liability expert. As the Court has found the testimony of Liability Expert to be admissible, BNSF's summary judgment argument based upon Valdez's failure to produce a liability expert fails.

Third, BNSF moves in *limine* to preclude so-called legal conclusions by Liability Expert. Specifically, BNSF argues it is improper for Liability Expert to conclude that BNSF failed to comply with the General Duty Clause set forth in the Occupational Safety and Heath Act ("OSHA").[32] In the alternative, BNSF argues

---

[32] OSHA's General Duty Clause states:
    (a) Each employer—
          (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are

10

this opinion is not relevant and/or the opinion's probative value is outweighed by unfair prejudice and confusion. The Court disagrees. The evidence of BNSF's alleged failure to comply with the OSHA General Duty Clause is relevant[33] and its probative value substantially outweighs the danger of unfair prejudice, confusing the issues or misleading the jury.[34] To prevail, Valdez must prove the elements of negligence: duty, foreseeability, breach, and causation.[35] As the safety standards set forth in the General Duty Clause effect what are considered reasonable safety precautions in the railroad industry, the OSHA General Duty Clause is relevant, has probative value, and satisfies the necessary balancing test.

Therefore, the Court is satisfied that Liability Expert is an expert qualified by knowledge, skill, experience, training, and education. In addition, the testimony of Liability Expert is relevant and will assist the jury in understanding the evidence and determining a fact in issue. The opinions of Liability Expert are based on

---

causing or are likely to cause death or serious physical harm to his employees;

(2) shall comply with occupation safety and health standards promulgated under this chapter.

29 U.S.C. § 654.

[33] Under the Delaware Rules of Evidence, "relevant evidence" means evidence having "any tendency to make a fact more probable or less probable than it would be without the evidence; and the fact is of consequence in determining the action." D.R.E. 401.

[34] Under Delaware Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." D.R.E. 403.

[35] *See Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 540 (1994) (stating that under FELA, courts should apply the traditional elements of negligence).

11

information reasonably relied on by experts in the field.  The opinion of Liability Expert will not create unfair prejudice or confuse the issues or mislead the jury.[36] The challenges to Liability Expert presented by BNSF are addressed to the weight and credibility of the proposed testimony and not to admissibility.  BNSF may effectively cross-examine Liability Expert to challenge the weight of the evidence.

### 3. Valdez's Medical Causation Expert: Blickenstaff, M.D., M.P.H., F.A.C.E.M.

BNSF challenges the reliability of Valdez's Medical Causation Expert who states that Valdez's cancer was caused by exposure in the BNSF workplace to asbestos and diesel exhaust.[37] The opinion of Medical Causation Expert is challenged by BNSF which argues that Medical Causation Expert's opinions are inherently unreliable and not based on peer-reviewed methodology that is accepted in the relevant field.  Valdez opposes this motion and contends Medical Causation Expert's opinions are reliable because the opinions are based on peer-reviewed scientific and medical literature; analysis of all witness testimony in this case; industrial hygiene literature regarding hazardous exposures of railroad workers; and specific expert liability opinions of Valdez's Liability Expert.

---

[36] *See* D.R.E. 403.

[37] The parties have stipulated that the only toxic substances at issue are asbestos and diesel exhaust.  *Valdez v. BNSF Ry. Co.*, Del. Super., C.A. No. N17C-09-299, Rocanelli, J. (Dec. 10, 2020) (ORDER).

12

Medical Causation Expert relies on a report from the International Agency for Research on Cancer ("IARC"). The IARC is:

> [P]art of the World Health Organization. Its mission is to coordinate and conduct research on the causes of human cancer, the mechanisms of carcinogenesis, and to develop scientific strategies for cancer control. The Agency is involved in both epidemiological and laboratory research and disseminates scientific information through publications, meetings, courses, and fellowships.[38]

Monographs published by the IARC "identify environmental factors that are carcinogenic hazards to humans. These include chemicals, complex mixtures, occupational exposures, physical agents, biological agents, and lifestyle factors. National health agencies can use this information as scientific support for their actions to prevent exposure to potential carcinogens."[39]

IARC Monograph No. 105 deals specifically with diesel exhaust and its carcinogenicity.[40] Monograph No. 105 is a catalog of many studies on the subject of diesel fumes and its harmful effects, including the association between diesel

---

[38] Press Release, International Agency for Research on Cancer, (Jun. 12, 2012) https://www.iarc.fr/pressrelease/iarc-diesel-engine-exhaust-carcinogenic/.

[39] General Information, International Agency for Research on Cancer Monographs, https://monographs.iarc.fr/home/iarc-monographs-general-information/ (last visited Dec. 11, 2020).

[40] *See generally* International Agency for Research on Cancer, *Diesel and Gasoline Engine Exhausts and Some Nitroarenes*, Vol 105 (2012) [hereinafter "IARC 2012"], J.A. at 01659–02372, available at https://publications.iarc.fr/129 (providing evaluations of carcinogenic risk made by international working groups of independent scientists). "J.A." refers to the Joint Appendix filed by the parties in association with BNSF's motions in *liminie* and motions for summary judgment.

13

exhaust and cancer.[41]  Specifically, Medical Causation Expert references the IARC for the case-controlled studies that showed a statistically significant odds ratio for individuals with laryngeal cancer who were exposed to diesel exhaust.[42]

BNSF submits that Monograph No. 105 is not reliable as support for the association between diesel exhaust and throat cancer.  In support, BNSF relies upon the Delaware Superior Court decision in *Wilant v. BNSF Railway Co.*[43]  However, BNSF's reliance on *Wilant* is misplaced because *Wilant* involved a railroad employee who had developed *bladder* cancer.  In *Wilant*, the Court found that the IARC Monograph did not support the plaintiff's expert's opinion.  However, in the case before the Court, the IARC Monograph *does* support the expert's opinion with respect to *throat* cancer.[44]

The Court is satisfied that Medical Causation Expert is an expert qualified by knowledge, skill, experience, training, and education.  In addition, the testimony of Medical Causation Expert is relevant and will assist the jury in understanding the evidence and determining a fact in issue.  The opinions of Medical Causation Expert are reliable and are based on information reasonably relied upon by experts in the particular field of industrial hygiene.  The court finds that the opinions of Medical

---

[41] *See id.*

[42] *See* Medical Causation Expert's Report, J.A. at 00357–00360.

[43] 2020 WL 2467076, at *2 (Del. Super. May 13, 2020), order vacated in part on denial of reconsideration, 2020 W 3887881 (Del. Super. July 9, 2020).

[44] *See* IARC 2012, *supra* note 40, at 231–42, J.A. at 001899–001910 (identifying the case-control studies that indicate an increased risk of laryngeal cancer associated with exposure to diesel exhaust).

14

Causation Expert will not create unfair prejudice or confuse the issues or mislead the jury. [45] Therefore, the testimony of Medical Causation Expert is admissible. Any challenges by BNSF to the weight and credibility of the expert testimony of Medical Causation Expert may be addressed through cross-examination at trial.

BNSF also submits that BNSF is entitled to summary judgment because Valdez has failed to produce a medical causation expert competent to testify at trial. As the Court has found the testimony of Medical Causation Expert to be admissible, BNSF's summary judgment argument based upon Valdez's failure to produce a medical causation expert fails.

### III. BNSF's Motion *in Limine* to Preclude the Introduction of or Reference to Documents from the American Association of Railroads

BNSF moves in *limine* to preclude the introduction or reference to documents from the American Association of Railroads ("AAR"). BNSF argues the AAR documents are inadmissible hearsay, cannot be authenticated and are irrelevant. Valdez opposes this motion and contends that the AAR documents may be relied upon by its expert witnesses, including to demonstrate notice of potential hazards to employees, while acknowledging that the AAR documents are not admissible as substantive evidence.

A more well-developed record is required to ascertain whether it is appropriate for Valdez's expert witnesses to reference reliance on the AAR

---

[45] *See* D.R.E. 403.

documents at trial. At a minimum, a proper foundation must be laid. Certainly, the AAR documents are hearsay and will not be admitted as substantive evidence but the question of whether the probative value of reference to the AAR documents substantially outweighs the danger of unfair prejudice, confusing the issues or misleading the jury[46] will be resolved in the context of the trial using the evidentiary considerations that are well-settled in Delaware.[47]

## CONCLUSION

This matter shall proceed to trial where each party may engage in robust challenges to the evidence presented by the opposing party. The jury shall decide when Valdez knew or should have known that his cancer was caused by workplace exposure to the toxic substances at issue. Challenges to the weight of evidence may be presented through vigorous cross-examination and argument.

**NOW, THEREFORE, this 15th day of December 2020:**

1.      Motion for Summary Judgment of Defendant BNSF Railway Company f/k/a Burlington Northern and Santa Fe Railway Company is hereby DENIED;

2.      Motion to exclude expert testimony of Philip A. Smith, M.P.H., Ph.D., C.I.H., FAIHA and for summary judgment of Defendant BNSF Railway Company f/k/a Burlington Northern and Santa Fe Railway Company due to Valdez's failure to produce a liability expert is hereby DENIED;

---

[46] *See* D.R.E. 403.
[47] *See Gannett Co. v. Kanga*, 750 A.2d 1174, 1187 (Del. 2000) (emphasis added); *see also* D.R.E. 703.

16

3.      Motion of Defendant BNSF Railway Company f/k/a Burlington Northern and Santa Fe Railway Company to preclude the "improper legal conclusions" of Philip A. Smith, M.P.H., Ph.D., C.I.H., FAIHA is hereby DENIED;

4.      Motion to exclude expert testimony of Theron Blickenstaff, M.D., M.P.H., F.A.C.E.M. and for summary judgment of Defendant BNSF Railway Company f/k/a Burlington Northern and Santa Fe Railway Company based upon Valdez's failure to produce a medical causation expert is hereby DENIED; and

5.      Motion *in limine* of Defendant BNSF Railway Company f/k/a Burlington Northern and Santa Fe Railway Company to preclude the introduction or reference to Documents from the American Association of Railroads will be addressed at trial subject to the rulings herein.

**IT IS SO ORDERED.**

*Andrea L. Rocanelli*

_____
**The Honorable Andrea L. Rocanelli**

17