# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

RICHARD F. BURKHART, )
WILLIAM E. KELLY, RICHARD S. )
LAVERY, THOMAS R. PRATT, and )
GERALD GREEN, individually and on )
behalf of all other persons similarly )
situated, )
     )
     Plaintiffs, )
     )
     v. ) C.A. No. 2018-0691-NAC
     )
GENWORTH FINANCIAL, INC., )
GENWORTH HOLDINGS, INC., )
GENWORTH NORTH AMERICA )
CORPORATION, GENWORTH )
FINANCIAL INTERNATIONAL )
HOLDINGS, LLC and GENWORTH )
LIFE INSURANCE COMPANY, )
     )
     Defendants. )

## ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL

WHEREAS:

1.    Plaintiffs are putative creditors of GLIC.[1] Through this claw-back action, Plaintiffs seek under DUFTA to avoid transactions that Defendants caused GLIC to enter while GLIC allegedly was insolvent. Plaintiffs' claims focus on dividends declared in 2015 and a reinsurance agreement executed in 2016.

---

[1] Unless specified otherwise, capitalized terms have the meaning given them in the Court's previous decisions in this matter. *See Burkhart v. Genworth Fin., Inc.*, 275 A.3d 1259 (Del. Ch. 2022); *Burkhart v. Genworth Fin., Inc.*, 250 A.3d 842 (Del. Ch. 2020).

2. The parties have been battling over discovery for several years. Most of their disputes have been resolved by a discovery facilitator and a special master. Their latest dispute concerns two sets of financial documents.

3. The first set of documents targets information surrounding proposals made in 2015-2016 to acquire GLIC during GLIC's unsuccessful sale process (the "Bid Documents"). The Bid Documents consist of:

a. Offering memoranda and packages prepared for bidders;

b. Submitted bids, including from the three potential buyers that were identified in GLIC's proxy statement; and

c. Internal communications, and communications between Defendants and sell-side advisors or potential bidders, regarding the attempted sale.

Dkt. 237 at 6.

4. The second set of documents targets PGAAP materials prepared for a merger involving GLIC and a foreign buyer (the "PGAAP Documents"). Defendants executed a merger agreement with the buyer in 2016, but the merger failed to close. The PGAAP Documents consist of:

a. Final versions and all drafts of a "PGAAP Memo," as well as any PGAAP financial statements and their associated assumptions; and

b.      Communications about the PGAAP Memo and PGAAP financial statements, as well as the buyer's valuation of GLIC, including internal communications, and communications with the buy- or sell-side advisors.

*Id.* at 9–10 & n.12.

5.      Plaintiffs requested the Bid and PGAAP Documents from Defendants at various times throughout this litigation. Defendants have refused to produce them. So Plaintiffs now move to compel (the "Motion"). Defendants oppose the Motion.

6.      I heard argument on the Motion on January 19, 2023. The Motion is now ripe for decision.

NOW, THEREFORE, the Court having carefully considered the Motion, and the parties' written and oral arguments, IT IS HEREBY ORDERED, this 1st day of February 2023, as follows:

1.      Court of Chancery Rule 26(b) governs the scope of discovery. Under Rule 26(b)(1):

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, including the existence, description, nature, custody, condition and location of any documents, electronically stored information, or tangible things and the identity and location of persons having knowledge of any discoverable matter.

2.      "The threshold issue under Rule 26(b) is relevance." *In re Côte d'Azur Est. Corp.*, 2022 WL 17574747, at *8 (Del. Ch. Dec. 12, 2022). "Information sought in discovery is considered relevant if there is any possibility that the information

3

sought may be relevant to the subject matter of the action." *In re Appraisal of Dole Food Co.*, 114 A.3d 541, 549 (Del. Ch. 2014) (internal quotation marks omitted). "Under this standard, relevant evidence is discoverable, even if it may not be admissible." Ct. Ch. R. 26(b)(1) cmt.

3.      "The scope of discovery [under] Rule 26(b) is broad and far-reaching." *Cal. Pub. Emps.' Ret. Sys. v. Coulter*, 2004 WL 1238443, at *1 (Del. Ch. May 26, 2004) (cleaned up). Indeed, "the spirit of Rule 26(b) calls for all relevant information, however remote, to be brought out for inspection[.]" *Boxer v. Husky Oil Co.*, 1981 WL 15479, at *2 (Del. Ch. Nov. 9, 1981) (internal quotation marks omitted). As a result, "objections to discovery requests, in general, will not be allowed[.]" *Prod. Res. Gp., L.L.C. v. NCT Gp., Inc.*, 863 A.2d 772, 802 (Del. Ch. 2004) (internal quotation marks omitted). "Discovery is called that for a reason. It is not called 'hide the ball.'" *Klig v. Deloitte LLP*, 2010 WL 3489735, at *7 (Del. Ch. Sept. 7, 2010).

4.      The party seeking discovery initially bears a "slight" burden to "provide some minimal explanation" as to why the information sought is relevant. *Dole Food*, 114 A.3d at 550–51. If that burden is met, the objecting party must "show why and in what way the information requested is privileged or otherwise improperly requested." *Twitter, Inc. v. Musk*, 2022 WL 3591142, at *1 (Del. Ch. Aug. 23, 2022) (internal quotation marks omitted). "Generic and formulaic objections are

4

insufficient." *In re Oxbow Carbon LLC Unitholder Litig.*, 2017 WL 959396, at *1 (Del. Ch. Mar. 13, 2017) (internal quotation marks omitted). Generalized discovery objections are "tantamount to not making any objection at all." *Wood v. U.S. Bank Nat'l Ass'n*, 246 A.3d 141, 149 (Del. Ch. 2021) (internal quotation marks omitted).

5. Under DUFTA, "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation." 6 *Del. C.* § 1302(a). The parties have framed the question of relevancy in terms of DUFTA's concept of a "fair valuation." The parties have used this framing to present, through a discovery motion, merits-based arguments on the proper methodology for determining whether GLIC was "insolvent" in 2015-2016. For their part, Plaintiffs focus on fair value from the perspective of a willing buyer and willing seller. They contend that the question of a debtor's solvency under DUFTA—including that of an insurance company—is governed by fair market value principles. *See* Dkt. 237 at 3, 6–7, 12. In contrast, Defendants contend that the General Assembly's adoption of statutory accounting principles ("SAP") for purposes of the Delaware Insurance Code effectively preempts the field, rendering fair market value considerations irrelevant. *See* Dkt. 243 at 6–11; *see also* 18 *Del. C.* § 526(a).

6. A discovery motion is an inappropriate vehicle for arguing the merits. *See Deloitte LLP v. Flanagan*, 2009 WL 2425043, at *1 (Del. Ch. July 10, 2009). A discovery dispute must be resolved "as a discovery dispute," even if "discovery is

inherently related to the claims upon which the [proposed] discovery is based." *Fox v. Paine*, 2010 WL 2163148, at *1 (Del. Ch. May 20, 2010). So I have considered the parties' merits arguments for the limited purpose of determining whether the Bid and PGAAP Documents are discoverable. They are.

7.    The Bid Documents are relevant under Rule 26(b). The Bid Documents are tailored to negotiations surrounding, and merger terms proposed during, GLIC's 2015-2016 sale process. That process was unsuccessful. From a "common sense" standpoint, it is conceivable that the sale process was unsuccessful, in part, due to issues with the then-present value of GLIC's assets and liabilities. *See Boxer*, 1981 WL 15479, at *2 ("[T]he requirement of relevancy must be construed liberally and with common sense rather than . . . concepts of narrow legalisms." (internal quotation marks omitted)). So the Bid Documents may reveal information about GLIC's solvency. Accordingly, it cannot be said that the Bid Documents would have "no possible bearing" on Plaintiffs' claims. *See Dole Food*, 114 A.3d at 548.

8.    The PGAAP Documents are relevant under Rule 26(b) too. The PGAAP Documents are tailored to accounting analyses conducted in connection with a failed merger. These assessments may uncover information about GLIC's solvency. Plaintiffs point out, for example, that Defendants commissioned PGAAP materials to ascertain "fair value treatment" of GLIC's "assets and liabilities." Ex. E to Dkt. 237 at 1. Although that inquiry might ultimately have little utility, it does

6

track DUFTA's language. And Defendants do not dispute that fair value is the key question in the case; they simply propose their own methodology for deriving it. Accordingly, it cannot be said that the PGAAP documents would have no possible bearing on Plaintiffs' claims.

9. To reach the opposite conclusion, Defendants rely heavily on SAP. In their view, the Bid and PGAAP Documents are irrelevant because Delaware law looks to SAP, not market value, to determine the solvency of debtor-insurance companies. Dkt. 243 at 6–9. This position invites me to determine on a discovery motion the proper metrics for assessing GLIC's fair value. I decline. What matters here is whether the Bid and PGAAP Documents may potentially "advance issue formulation, . . . assist in fact revelation, and . . . reduce the element of surprise at trial." *Levy v. Stern*, 1996 WL 742818, at \*2 (Del. Dec. 20, 1996) (ORDER). They may. As even Plaintiffs acknowledge,[2] Defendants will be free to make their SAP arguments at a later stage and after they produce the documents.[3]

---

[2] *See* Dkt. 237 at 15 ("Plaintiffs do not contend GLIC's statutory accounting is irrelevant to GLIC's solvency–just that it does not foreclose other methods of proving solvency.").

[3] In doing so, I would expect Defendants to contend with Plaintiffs' Delaware authority, which seemingly holds that DUFTA's concept of a fair valuation envisions inclusion of a market-based analysis, *see, e.g.*, *Quadrant Structured Prods. Co. v. Vertin*, 2015 WL 6157759, at \*16 (Del. Ch. Oct. 20, 2015); *Quadrant Structured Prods. Co. v. Vertin*, 115 A.3d 535, 556, 561 & n.35 (Del. Ch. 2015), and focuses on factual, rather than solely statutory, insolvency, *see, e.g.*, *Blackmore P'rs, L.P. v. Link Energy LLC*, 2005 WL 2709639, at \*6 (Del. Ch. Oct. 14, 2005); *Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 787–90 (Del. Ch. 1992). I also would expect Defendants to support their argument that

7

10. In response to these considerations, Defendants contend that the Bid and PGAAP Documents are irrelevant because they "are not *meaningful ways* to assess the solvency of an insurance company[.]" Dkt. 243 at 4 (emphasis added). Similarly, Defendants insist that PGAAP analyses are irrelevant to GLIC's fair value because they rest on "artificial" assumptions. *Id.* at 10. But these critiques conflate the discovery question of relevance with the trial questions of weight and admissibility. Weight and admissibility do not define the scope of discovery.[4] Relevance does.

11. Even so, Defendants' "irrelevance" arguments prove too much. Under Rule 26(b), "irrelevant information" is discoverable if it is "reasonably likely to uncover relevant information." *Hamilton P'rs, L.P. v. Highland Cap. Mgmt., L.P.*, 2016 WL 612233, at *2 (Del. Ch. Feb. 2, 2016). This case is illustrative. Based on the limited material presented to me at this stage, Defendants appear to have

---

SAP covers all insolvency theories recognized under DUFTA, not just theories based on "claims-paying" ability. Dkt. 243 at 9; *see* 6 *Del. C.* §§ 1304–05.

[4] *See* Ct. Ch. R. 26(b)(1) ("It is not a ground for objection that the information sought will be inadmissible at trial."); *Rsrvs. Dev. Corp. v. Wilm. Tr. Co.*, 2009 WL 482915, at *2 (Del. Ch. Feb. 10, 2009) ("While defendant is free to argue that the financial information should not be given much weight by the Court, the information is certainly relevant to the issues in this case and subject to discovery."); *Boxer*, 1981 WL 15479, at *2 (explaining that relevant information is discoverable, even if it is later excluded or given diminished weight "when determining the ultimate issues at trial" (internal quotation marks omitted)); *Fortis Advisors, LLC v. Dematic Corp.*, 2022 WL 18359410, at *22 n.174 (Del. Super. Dec. 29, 2022) ("[T]he contention that discovery might be misleading goes to the weight to be accorded to the evidence, not whether or not it should be produced.").

potentially deployed market valuation analyses—not SAP—to price GLIC's assets and liabilities in at least some capacities in connection with the analyses performed following the 2016 merger agreement's execution. Now, Defendants maintain that SAP supplies the *only* valuation standard for determining GLIC's solvency. To be clear, I understand that Defendants will likely have explanations for why this is simply a case of comparing "apples and oranges." And it may well be that I end up agreeing with Defendants on that. But evidence relevant to credibility is also generally discoverable,[5] and Plaintiffs have adequately shown that the Bid and PGAAP Documents are sufficiently relevant for assessing the credibility of Defendants' invocation of SAP. So, even if I ultimately conclude, as Defendants urge, that the Bid and PGAAP Documents are substantively irrelevant for purposes of calculating solvency, Plaintiffs are still entitled to learn more.

---

[5] *See In re Rural Metro Corp. S'holders Litig.*, 2013 WL 6634009, at *6 (Del. Ch. Dec. 17, 2013) (barring introduction of declaration submitted by a witness who did not appear at trial because, among other reasons, the opposing party did not have an opportunity to take discovery into information potentially relevant to the witness's credibility); *Rohm & Haas Co. v. Dow Chem. Co.*, 2009 WL 537193, at *2 (Del. Ch. Feb. 19, 2009) (permitting party to take a deposition of an interested witness because the deposition could have led to "relevant impeachment evidence"); *see also In re Asbestos Litig.*, 673 A.2d 159, 162 n.1 (Del. 1996) ("Contradictory answers in the course of discovery may be used for impeachment purpose[s] at trial . . . ."). Decisions interpreting the Superior Court's identical Civil Rule 26(b) have held that Superior Court Civil Rule 26(b) permits, in the appropriate case, discovery of evidence relevant solely to impeachment. *See, e.g.*, *Woodstock v. Wolf Creek Surgeons, P.A.*, 2017 WL 3727019, at *5–6 (Del. Super. Aug. 30, 2017); *Hunter v. Bogia*, 2015 WL 5050648, at *5–6 (Del. Super. July 29, 2015).

12. Similarly, Rule 26 permits discovery where later-developed facts shed light on earlier-produced information. *See In re Madison Square Garden Ent. Corp. S'holders Litig.*, 2021-0468-KSJM, at 104:21–24 (Del. Ch. Jan. 17, 2023) (TRANSCRIPT). In those cases, the developing record may justify additional production. *Id.* at 105:1–6. Here, there have been instances where Plaintiffs have mapped routes to potentially relevant information using various references to other documentation found in materials that Defendants agreed to produce. The Bid and PGAAP Documents are examples. Under these circumstances, additional production is warranted, even though Defendants believe they have charted this terrain already. *See* Dkt. 243 at 5–6.

13. As a last resort, Defendants cite proportionality and expense. They count the number of pages they have produced, *id.* at 11, and insist that "any marginal relevance" offered by the Bid and PGAAP documents is outweighed by the costs of further production, *id.* at 5, 11–12. It is true that the Court may limit or deny discovery if production would be unduly burdensome or otherwise disproportionate to the needs of the case. *See* Ct. Ch. R. 26(b). But there are multiple factors that the Court considers in this context. *See Wei v. Zoox, Inc.*, 268 A.3d 1207, 1213–16 (Del. Ch. 2022). And where, as here, "relevance has been demonstrated," the Court will closely "scrutinize claims that the burden of producing requested information is disproportionate[.]" 8 Charles Alan Wright & Arthur R. Miller,

*Federal Practice and Procedure* § 2008.1, Westlaw (3d ed. database) (last updated Apr. 2022). Under such scrutiny, Defendants' arguments fall short.

14. For one thing, Plaintiffs *have* requested the Bid and PGAAP Documents before. The parties met and conferred on these documents and contested a need for them in the context of disputes heard by the discovery facilitator and the special master. *See, e.g.*, Ex. T to Dkt. 250. Defendants have not argued otherwise.

15. For another, the Bid and PGAAP Documents are proportional to the needs of the case given the issues at stake. Plaintiffs have suggested that the damages in this case could run to over one billion dollars. *See* Dkt. 254 at 25:16–17. I make no comment on that. The importance of the solvency issue, coupled with the asserted amount in controversy, militates in favor of production. *See Wei*, 268 A.3d at 1215–16.

16. Finally, despite my inquiry at oral argument, Defendants have not suggested any reasonable limitations on Plaintiffs' proposed scope of discovery that would assist in my analysis. Indeed, Defendants have confined my review to their adversarial understanding of the Bid and PGAAP Documents, without producing some first despite an offer to Plaintiffs to do so. This shadow-boxing approach runs contrary to the efficiency-based rationale animating civil discovery. *See Olszewski v. Howell*, 253 A.2d 77, 78 (Del. Super. 1969) (Quillen, J.) ("[D]isclosure should expedite the disposition of the case . . . by bringing to head any objections to the

11

evidence, and by giving the plaintiffs an advance opportunity to develop counter-evidence.").

17.    It appears that, at some point before Plaintiffs filed the Motion, Defendants agreed to produce formal bid letters to and formal responses by GLIC. Even so, Defendants did not produce those documents before oral argument. This deprived the parties of what could have been a very useful opportunity to engage constructively on the terms of an appropriate production order. So, during argument, I asked Defendants' counsel to assume that I would direct Defendants to make some degree of additional production and asked for guidance in crafting an appropriate ruling. Counsel reiterated the formal bid correspondence and offered that a "final" PGAAP dry run could be produced in addition to a previously produced (and, according to Plaintiffs, heavily redacted) fairness opinion. *See* Dkt. 254 at 69–72:1–2. I, of course, understand why counsel would be reluctant to be seen as "giving up the store" during argument, but Defendants' position also makes it difficult to craft a ruling. One might say that the next step would be to direct the parties to meet and confer before issuing a ruling. But frankly, that approach creates unhelpful incentives for parties resisting proper discovery.

18.    Defendants have suggested that an order granting the Motion could yield hundreds of thousands of documents. Because the parties have not meaningfully engaged on this issue, any attempt to construct a ceiling here would

12

be, at best, arbitrary. By way of guidance, however, I do expect that any review and production will be *substantially* lower than six digits.[6]

19.    The Bid and PGAAP Documents are relevant to Plaintiffs' claims and proportional to the needs of the case. Accordingly, I GRANT the Motion.

 

___*/s/ Nathan A. Cook*___
Vice Chancellor Nathan A. Cook
Dated: February 1, 2023

---

[6] Counsel should be advised that I expect the parties to meet and confer in good faith on this issue and that I do not anticipate motion practice on the appropriate number of documents for review and production. In the undesirable event that a dispute arises, the parties will submit competing proposals and I will likely select one.