# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARY RUMBO and PAUL RUMBO, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. N13C-04-300 PEL |
| AMERICAN MEDICAL SYSTEMS, INC., | ) ) ) ) | |
| Defendant. | ) ) | |

Submitted: March 26, 2021
Decided: April 29, 2021

***Upon Defendant's Motion for Summary Judgment***
**GRANTED**

## <u>MEMORANDUM OPINION</u>

R. Joseph Hrubiec, Esquire, Napoli Shkolnik LLC, Wilmington, Delaware, Attorney for Plaintiff.

Brian M. Rostocki, Esquire, Justin M. Forcier, Esquire, Reed Smith LLP, Wilmington, Delaware, Barbara R. Binis, Esquire, Stephen J. McConnell, Esquire, Whitney L. Mayer, Esquire, Christian W. Saucedo, Esquire, Reed Smith LLP, Philadelphia, Pennsylvania, Attorneys for Defendant.

**Rocanelli, J.**

This is a products liability case arising out of the implantation of pelvic mesh. Plaintiff Mary Rumbo[1] filed an Amended Short Form Complaint ("Complaint") on April 27, 2013 against Defendant American Medical Systems, Inc. ("AMS") as part of the AMS Pelvic Mesh Products Liability Litigation.[2] AMS seeks summary judgment in its favor, alleging that the claims by Rumbo are barred by the applicable statutes of limitations. This is the Court's decision on the Motion for Summary Judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2002, Mary Rumbo had a pubovaginal sling implanted. Although Mary Rumbo experienced some improvement, the sling eventually failed. After the sling failed, on April 4, 2006, Dr. Andre Godet implanted pelvic mesh ("2006 Pelvic Mesh Implant Surgery"), specifically a Monarc Sling and Perigee Device ("AMS Pelvic Mesh").[3]

---

[1] Mary Rumbo's husband, Paul Rumbo, seeks recovery for loss of consortium. Hereafter, Mary Rumbo will be referenced as "Mary Rumbo" and both plaintiffs will be referenced as "Rumbo."

[2] Rumbo incorporated by reference Plaintiffs' Master Long Form Complaint in *In re AMS Pelvic Mesh Prods. Liab. Litig.*, in the Superior Court of the State of Delaware in and for New Castle County, filed as of April 25, 2012, under Civil Action No. N11C-07-212.

[3] Def.'s Mot. Summ. J. Ex. C, at § II ¶ 1 [hereinafter Rumbo's Fact Sheet].

Immediately after awakening from the 2006 Pelvic Mesh Implant Surgery Mary Rumbo described "severe pain"[4] that she described as a 10 out of 10.[5]  In response, Dr. Godet conducted a CT scan.[6]  On April 20, 2006, just two weeks after the 2006 Pelvic Mesh Implant Surgery, Dr. Godet told Mary Rumbo that the AMS Pelvic Mesh might have to be removed if Mary Rumbo did not begin to feel better.[7]  Dr. Godet performed several other pelvic examinations after the 2006 Pelvic Mesh Implant Surgery and, on May 22, 2006, just six weeks later, Dr. Godet found exposed mesh.[8]  Dr. Godet informed Mary Rumbo that the pelvic mesh was protruding.[9]  Mary Rumbo testified that it was her understanding at the time that the mesh was "wrapping around [her] urethra" and was "exposed down into [her] urethra."[10]

Mary Rumbo underwent multiple revision surgeries, the first of which was performed by Dr. Godet on June 9, 2006.[11]  Mary Rumbo experienced the same severe pain following the procedure.[12]  Dr. Godet performed a second revision surgery in July of 2006.[13]  Again, this procedure did not relieve Mary Rumbo's

---

[4] Mary Rumbo Dep.36:10–14.  Mary Rumbo was deposed on August 8, 2019 and responded to interrogatory questions.
[5] Mary Rumbo Dep. 36:22–24.
[6] Mary Rumbo Dep. 37:7–12.
[7] Dr. Godet Dep. 131:4–11.
[8] Dr. Godet Dep. 133:23–134:11.
[9] Dr. Godet Dep. 134:12–14.
[10] Mary Rumbo Dep. 39:3–9.
[11] Mary Rumbo Dep. 39:10–12.
[12] Mary Rumbo Dep. 39:13–40:9.
[13] Mary Rumbo Dep. 40:22–41:1.

pain.[14] Dr. Godet eventually diagnosed Mary Rumbo with interstitial cystitis.[15] Dr. Godet informed Mary Rumbo that she needed "someone that had more experience with the mesh to try to get it removed."[16] Mary Rumbo moved from Alaska to Texas in 2008.[17] Mary Rumbo underwent another three mesh explant surgeries in Texas as well as a variety of other surgical procedures, including insertion of a pain pump and pudendal nerve block.[18]

Mary Rumbo and Paul Rumbo testified that they saw television commercials in 2009 from attorneys regarding pelvic mesh injuries.[19] Paul Rumbo testified that the advertisement instructed: "[I]f you are having [mesh-related] problems, call this number."[20] Paul Rumbo also testified that he and Mary Rumbo knew that they needed to contact a lawyer to assert a claim.[21]

Rumbo filed this products liability action in Delaware Superior Court on April 27, 2013, claiming injuries allegedly caused by the AMS Pelvic Mesh. As noted, the 2006 Pelvic Mesh Implant Surgery and several revision surgeries took place in

---

[14] Mary Rumbo Dep. 43:8–15.
[15] Mary Rumbo Dep. 46:19–47:15. Interstitial cystitis "occurred because of the mesh and all the irritation and the surgeries that [she] had to have." Mary Rumbo Dep. 47:1–2.
[16] Mary Rumbo Dep. 44:14–45:7.
[17] Rumbo's Fact Sheet § I ¶ 4.
[18] *See* Rumbo's Fact Sheet § III ¶ 6.
[19] Mary Rumbo Dep. 121:22–122:15; Paul Rumbo Dep. 8:1–9:1.
[20] Paul Rumbo Dep. 8:25–9:1.
[21] Paul Rumbo Dep. 9:5–12; 12:1–21.

Alaska and additional surgeries, including explant surgery, took place in Texas. Mary Rumbo died in April 2020.[22]

## **STANDARD OF REVIEW**

The Court may grant summary judgment only where the moving party can "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[23] A genuine issue of material fact is one that "may reasonably be resolved in favor of either party."[24] The moving party bears the initial burden of proof and, once that is met, the burden shifts to the non-moving party to show that a material issue of fact exists.[25] At the motion for summary judgment phase, the Court must view the facts "in the light most favorable to the non-moving party."[26] Summary judgment is only appropriate if Rumbo's claim lacks evidentiary support such that no reasonable jury could find in Rumbo's favor.[27] "In the case of a motion for summary judgment based on a statute of limitations

---

[22] When scheduling oral argument on the motion for summary judgment, the Court was informed by defense counsel that Mary Rumbo had died several months previously. Plaintiffs' counsel provided a satisfactory response to the Court's inquiry regarding why counsel had not informed the Court of this development. Nevertheless, as of the date of this Memorandum Opinion, Plaintiffs' counsel has not substituted the Estate of Mary Rumbo as plaintiff.

[23] Super. Ct. Civ. R. 56(c).

[24] *Moore v. Sizemore*, 405 A.2d 679, 680–81 (Del. 1979).

[25] *Id.*

[26] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).

[27] *See Hecksher v. Fairwinds Baptist Church, Inc.*, 115 A.3d 1187, 1200–05 (Del. 2015); *Edmisten v. Greyhound Lines, Inc.*, 2012 WL 3264925, at *2 (Del. Aug. 13, 2012) (TABLE).

defense, the Court must grant the motion if the record reveals that no genuine issue of fact exists regarding the date on which the applicable statute of limitations began to run, the date to which the statute of limitations may have been tolled, and the date on which the plaintiff filed her complaint with the court."[28]

## DISCUSSION

### A. Delaware's Borrowing Statute Mandates Application of Delaware's Statute of Limitations in this Case

"As a general rule, the law of the forum governs in matters relating to the statute of limitations."[29]   However, this general rule is modified in certain circumstances by Delaware's so-called "borrowing statute" which provides, in pertinent part:

> Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or county where the cause of action arose, for bringing an action upon such cause of action.[30]

Under the borrowing statute, Delaware courts must apply the Delaware limitations period if it is shorter than the limitations that might apply for other jurisdictions. Moreover, "Delaware courts have uniformly held that when a complaint alleging a

---

[28] *Burrell v. Astrazeneca LP*, 2010 WL 3706584, at *2 (Del. Super. Sept. 20, 2010) (citing *McClements v. Kong*, 820 A.2d 377, 381 (Del. Super. 2002)).
[29] *Machala v. Boehringer Ingelheim Pharm., Inc.*, 2017 WL 2814728, at *3 (Del. Super. June 29, 2017).
[30] 10 *Del. C*. § 8121.

5

cause of action that arose outside of Delaware is time-barred under the Delaware statute of limitations, the Court need not conduct a choice of law analysis and may apply the Delaware statute of limitations."[31] "Thus, if the claim fails under the Delaware statute of limitations (with 'accoutrements'), it is time barred as a matter of law."[32]

Here, it is undisputed that none of Rumbo's claims arose in Delaware.[33] As between the Delaware limitations period and the limitations periods in Alaska and Texas, the borrowing statute mandates that the Court apply the shorter of the three

---

[31] *Burrell*, 2010 WL 3706584, at *4 (citing *Elmer v. Tenneco Resins, Inc.*, 698 F. Supp. 535, 539 (D. Del. 1988) ("Because Delaware's borrowing statute requires the Court to apply the *shorter* of the Delaware statute of limitations or the statute of limitations of the state where the cause of action arose, and plaintiff's claim is time barred under Delaware law, further analysis of where the action arose and what statute of limitations would apply there is unnecessary.")).

[32] *Id.*

[33] While the parties dispute whether the cause of action arose in Alaska or Texas, neither party argues the cause of action arose in Delaware.

periods. Delaware,[34] Alaska[35] and Texas[36] all have a limitations period of two years

for products liability.[37] In addition, each jurisdiction applies the discovery rule,

albeit with slight differences that are not significant on the facts of this case.[38]

---

[34] *See* 10 *Del. C.* § 8119. The Delaware statute provides:
> No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained; subject, however, to the provisions of § 8127 [Alleged deficiencies in the construction of improvements to real property] of this title.

10 *Del. C.* § 8119.

[35] *See* ALASKA STAT. ANN. § 09.10.070. The Alaska statute provides:
> (a) Except as otherwise provided by law, a person may not bring an action . . . (2) for personal injury or death . . . unless the action is commenced within two years of the accrual of the cause of action.

ALASKA STAT. ANN. § 09.10.070.

[36] *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 16.003. The Texas statute provides:
> (a) Except as provided by Sections 16.010 [Misappropriation of Trade Secrets], 16.0031 [Asbestos-Related or Silica-Related Injuries], and 16.0045 [Limitations Period for Claims Arising from Certain Offenses], a person must bring suit for . . . personal injury. . . not later than two years after the day the cause of action accrues.

TEX. CIV. PRAC. & REM. CODE. ANN. § 16.003.

[37] Although a choice of law analysis is not necessary in this case, the Court reviewed the applicable laws in Alaska and Texas to verify all three states implement the same, or similar, fact-based inquiries into the date that a plaintiff is put on notice of a potential claim. As stated, each jurisdiction has a two-year statute of limitations.

[38] *See Morton v. Sky Nails*, 884 A.2d 480, 481 (Del. 2005) ("Under the time of discovery rule, the statute of limitations does not begin to run until a party knows or has reason to know that he/she has been injured."); *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 509 (Alaska 2015) (explaining that the common law discovery rule tolls the statutory period until "the claimant discovers or reasonably should have discovered, the existence of all elements essential to the cause of action"); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990) ("The discovery rule represents an exception to [the] general rule of accrual" and when applied, "the rule operates to toll the running of the period of limitations until the time that the plaintiff discovers, or through the exercise of

Accordingly, even if this Court did *not* apply Delaware's borrowing statute and instead employed a choice of law analysis, the practical result of dismissal of this lawsuit would be the same because Rumbo's claims are time-barred regardless of whether Delaware, Alaska or Texas law is applied.

Rumbo's reliance on decisions applying the borrowing statute is misplaced because those decisions are not applicable here.[39] The concerns raised in *Saudi*

reasonable care and diligence should discover, the nature of his injury."). It is of note that the discovery rule in Texas differs slightly in that Texas places the burden on the defendant to negate the discovery rule. *See Weaver v. Witt*, 561 S.W.2d 792, 794 (Tex. 1977) (maintaining that the burden is on the movant "to negate the pleading of the discovery rule by proving as a matter of law that there is no genuine issue of fact concerning the time when the plaintiff discovered or should have discovered the nature of the injury). However, this distinction does not come into play because the discovery rule does not toll the statute of limitations in this case regardless of which state law is applied.

[39] Specifically, Rumbo argues Delaware's borrowing statute should not apply based on the following cases: *Bear Stearns Mortgage Funding Trust 2006-Sl1 v. EMC Mortgage LLC*, 2015 WL 139731 (Del. Ch. Jan. 12, 2015) and *Furnari v. Wallpang*, 2014 WL 1678419 (Del. Super. Apr. 16, 2014). In these cases, the court declined to apply the borrowing statute, in part, based on a lack of evidence that the plaintiffs engaged in forum shopping when selecting Delaware to litigate their claims. The Court finds that these cases are both exceptional and distinguishable. Both the *Bear Stearns* court and the *Furnari* court rely on the ruling by the Delaware Supreme Court in *Saudi Basic Industries Corp. v. Mobil Yanbu Petrochemical Co.*, 866 A.2d 1 (Del. 2005). In *Saudi Basic*, the plaintiff brought a declaratory judgment action against defendants in Delaware. *Saudi Basic*, 866 A.2d at 6. Defendants then asserted counterclaims in tort and for breach of contract. *Id.* In response, plaintiff argued that the Delaware borrowing statute barred defendants' counterclaims because Delaware's shorter limitations period applied. *Id.* at 13. The *Saudi Basic* Court noted that applying Delaware's borrowing statute would bar defendants' claims despite the fact that defendants did not choose to litigate the claims in Delaware. If defendants had brought their claims in Saudi Arabia, the claims would not have been barred. Therefore, the *Saudi Basic* Court rejected the "literal

8

*Basic*, *Bear Stearns*, or *Furnari* are not implicated in this case. This is not a case where Rumbo was brought as a defendant to Delaware to litigate this action. Moreover, Rumbo did not have to file this action in Delaware solely to assert jurisdiction over AMS. Rumbo is a non-resident plaintiff who chose to file her claims in Delaware. Delaware's borrowing statute requires application of Delaware's statute of limitations to Rumbo's claims.[40]

---

construction" of the borrowing statute as applied to the counterclaims of the party who did not choose Delaware as the forum. *Id.* at 16–17. The Court explained that the borrowing statute was designed for the specific purpose of preventing a non-resident plaintiff from "circumventing the shorter limitations period mandated by the jurisdiction where the cause of action arose." *Id.* at 17. Rather than subvert the underlying purpose of the borrowing statute to deprive defendants of any forum to assert their counterclaims, the *Saudi Basic* Court crafted an exception to the borrowing statute to disallow plaintiff from avoiding counterclaims by choosing Delaware as the forum. In *Bear Stearns*, the Court declined to apply the plain language of the borrowing statute where the foreign limitations period was longer than Delaware's limitations period. *Bear Sterns*, 2015 WL 139731, at *9. The Court in *Furnari* similarly declined to apply the plain language of the borrowing statute in favor of a forum shopping exception. *Furnari*, 2014 WL 1678419, at *1. Thus, the *Furnari* court preserved plaintiff's claim when the plaintiff was forced, for jurisdictional reasons, to file in Delaware. *Id.* at *5.

[40] *See Machala*, 2017 WL 2814728, at *5 (following the plain language of the borrowing statute after analyzing *Saudi Basic* and *Furnari*); *TrustCo Bank v. Mathews*, 2015 WL 295373, at *8 (Del. Ch. Jan. 22, 2015) (applying the borrowing statute when a plaintiff's cause of action arose out of state, irrespective of whether the plaintiff is forum shopping, and further explaining that the application of *Saudi Basic* was limited to instances where "an absurd outcome or result that subverts the borrowing Statute's fundamental purpose would otherwise occur"); *Huffington v. T.C. Grp., LLC*, 2012 WL 1415930, at *9 (Del. Super. Apr. 18, 2012) (rejecting plaintiff's assertion that *Saudi Basic* created a broad ruling limiting the borrowing statute to only those instances where the plaintiff seeks to avoid a jurisdiction with a shorter limitations period).

**B.** **Rumbo's Claims are Barred by Delaware's Two-Year Statute of Limitations**

The borrowing statute requires that "the Court must first determine whether [plaintiff's] claims are time barred under the Delaware statute of limitations . . . .  If so, then no further analysis is necessary and the motion for summary judgment must be granted."[41]  The limitations period in Delaware for personal injury claims is two years "from the date upon which it is claimed that such alleged injuries were sustained."[42]  "The two-year statute of limitations begins to run when the plaintiff should have known about the injury in question."[43]  When the "harmful effect first manifested itself, and became ascertainable is a question of fact which is to be determined on a case by case basis by the Trial Court."[44]  "When either plaintiff's knowledge or the reasonableness of his [or her] actions are in dispute in the light of conflicting evidence in the record the issue is best left to the jury.  It is only when the record is uncontroverted that the plaintiff 'discovered' his [or her] injury more than two years prior to the filing of suit that summary judgment is appropriate."[45]

---

[41] *Burrell*, 2010 WL 3706584, at *4.

[42] 10 *Del. C.* § 8119.

[43] *Dickens v. Taylor*, 671 F. Supp. 2d 542, 547 (D. Del. 2009).

[44] *In re Asbestos Litig.*, 673 A.2d 159, 163 (1996) (quoting *Bendix Corp. v. Stagg*, 486 A.2d 1150, 1153 (Del. 1984)).

[45] *Id.*

"The moving party bears the burden of proving that a limitations period has lapsed and that the claim is time-barred."[46]

Rumbo's assertion that Rumbo did not and could not have discovered that her injuries were related to AMS Pelvic Mesh are undermined by Rumbo's "Fact Sheet"[47] in which Mary Rumbo stated that she knew "Immediately" and/or "One week post operation" that her injuries were caused by the AMS Pelvic Mesh.[48] In

---

[46] *Machala*, 2017 WL 2814728, at *6 (citing *SPX Corp. v. Garda USA, Inc.*, 2012 WL 6841398, at *2 (Del. Super. Dec. 6, 2012)).

[47] The Fact Sheet is a document where Rumbo, who allegedly suffered injury because of a pelvic mesh product, provides specific information under oath. The answers contained in Rumbo's completed Fact Sheet are considered the same as answers provided in interrogatories. *See* Rumbo's Fact Sheet.

[48] *See* Rumbo's Fact Sheet § II ¶ 6.

> 6. Do you claim that you suffered bodily injuries as a result of the implantation of any of the pelvic mesh products?
>           Yes
> If Yes:
> 6.a. Describe the bodily injuries, including any emotional or psychological injuries, that you claim resulted from the implantation of the pelvic mesh product(s).
>           Erosion into bladder and vaginal wall. Severe pain; severe muscle dysfunction; severe nerve damage. Constant urinary tract infections and vaginal infections. Spasms in bladder/vaginal wall and rectum
> 6.b. When is the first time you experienced symptoms of any bodily injuries you claim in your lawsuit to have resulted from the pelvic mesh product(s)?
>           Two weeks post implantation
> 6.c. When did you first attribute these bodily injuries to the pelvic mesh product(s)?
>           Immediately
> 6.d. To the best of your knowledge and recollection, please state approximately when you first saw a health care provider for each of

11

addition, Mary Rumbo and Paul Rumbo both testified in their depositions that they saw television advertisements by lawyers in 2009 addressing personal injuries caused by pelvic mesh. The record is closed as far as Mary Rumbo's testimony is concerned.[49] There is no genuine issue of material fact regarding when Mary Rumbo was on notice of a potential link between the AMS Pelvic Mesh and her injuries.

As Mary Rumbo stated unequivocally in her deposition testimony, the AMS Pelvic Mesh failed to relieve her symptoms and caused her pain "immediately" after the 2006 Pelvic Mesh Implant Surgery. Moreover, Rumbo and her husband saw a television advertisement in 2009, after which they determined they needed to contact a lawyer to assert a claim. Even if 2006 was not the pivotal date for notice of a potential claim, the 2009 television commercial put Rumbo on notice. Thus, the claims set forth in the Complaint filed on April 27, 2013—at least 6 years after surgery and more than 3 years after seeing the television advertisement—are time-barred by a two-year statute of limitations.

_____

those bodily injuries you claim to have experienced relating to the pelvic mesh product(s)?
                One week post operation
Rumbo's Fact Sheet § II ¶ 6(a)–(d).
[49] As noted, Mary Rumbo passed away in April of 2020. Therefore, Mary Rumbo's testimony is limited to depositions, interrogatories and the answers contained in her Fact Sheet.
[49] *See* Rumbo's Fact Sheet § II ¶ 6.

## CONCLUSION

For the reasons set forth herein, Defendant American Medical Systems, Inc. is entitled to judgment as a matter of law.

**NOW, THEREFORE, this 29 day of April 2021, Defendant's Motion for Summary Judgment is hereby GRANTED, and JUDGMENT is entered in favor of Defendant American Medical Systems, Inc. and against Plaintiffs Mary Rumbo and Paul Rumbo.**

**IT IS SO ORDERED.**

*Andrea L. Rocanelli*

**The Honorable Andrea L. Rocanelli**